ROBINSON LAND & LUMBER CO. OF ALABAMA, INC., *v.* AVERA
& N. E. R. CO.

(Division A.  June 9, 1930.  Suggestion of Error Overruled June 26,
1930.)

[128 So. 738. No. 28497.]

Armbrecht & Hand, of Mobile, Ala., and Stevens & Heidelberg, of Hattiesburg, for appellant.

Currie, Stevens & Currie, of Hattiesburg, for appellee.

Argued orally by **R. W. Heidelberg**, for appellant, and by **Geo. W. Currie**, for appellee.

**Cook, J.**, delivered the opinion of the court.

The Avera & Northeastern Railroad Company, a Mississippi corporation, filed an eminent domain suit with the circuit clerk of Greene county, Mississippi, seeking to condemn a right of way across approximately three-quarters of a mile of cut-over land belonging to the Robinson Land & Lumber Company, for the purpose of building a railroad from Avera, Mississippi, to State Line, Mississippi. Before the date set for the hearing of this suit the appellant filed a bill in the chancery court of Greene county, seeking to enjoin the said Avera & Northeastern Railroad Company from proceeding with said eminent domain suit and from taking the right of way sought to be condemned thereby. A temporary injunction was issued restraining the said railroad company from taking, as a result of eminent domain proceedings or otherwise, the right of way over the appellant's land, which it was seeking to condemn. Thereafter the defendant railroad company filed its answer denying the facts charged in the bill, and made its answer a cross-bill, praying that the chancery court grant unto it the right of way which it was seeking to obtain in said

eminent domain proceedings, and filed a motion to dissolve the temporary injunction, and to award it damages because of the wrongful suing out of the same. Upon the hearing of the motion to dissolve, by agreement, it was treated as a final hearing, and upon the voluminous proof offered by the respective parties, the chancellor rendered a decree dissolving the temporary injunction, and dismissing finally the bill of complaint, and awarding the appellee damages by way of attorneys fees for the wrongful suing out of the writ of injunction, and from this decree this appeal was prosecuted.

The bill of complaint filed by the appellant sets forth the history of certain prior proceedings between the Turner Lumber Company and the appellant, by which the Turner Lumber Company sought to condemn practically the same right of way for a private logging road, and also set forth in detail the facts leading up to the institution of that proceeding, as well as the result of this prior litigation. None of these facts are necessary to be here restated, as they may be found fully set forth in the opinion rendered in this prior cause, which is reported in 155 Miss. 882, 125 So. 86. The bill averred that while an appeal from the judgment of the circuit court in this prior proceeding was pending in this court, the stockholders of the Turner Lumber Company applied for and obtained a charter for the Avera & Northeastern Railroad Company, to construct a line of railroad from Avera, in Greene county, Mississippi, to State Line, in Greene county, Mississippi; that thereafter the said incorporators met and attempted to organize the said corporation, and fixed the capital stock thereof at twenty-five thousand dollars, and purported to elect a board of directors and other officers of said railroad corporation, and thereupon filed in the office of the secretary of state a report of said purported organization; and that thereafter the appellee railroad company filed in the circuit court of Greene county an application in an eminent domain pro-

ceeding against the appellant, by which it sought to condemn, over and across lands of the appellant, a particularly described right of way one hundred feet wide, which covered and included the right of way which had been sought under the prior proceedings between the Turner Lumber Company and the appellant.

It was further averred that the Avera & Northeastern Railroad Company is not such a railroad company as is vested with power, under the constitution and laws of this state, to exercise the right of eminent domain; that said railroad company is not vested with the power, under its application for a charter, nor under the proclamation of the governor, to do common carrier railroad business such as is contemplated and required of railroad corporations under the constitution and laws of the state; that neither in its application, nor in the proclamation of the governor, is it given the power or authority to do anything other than a common carrier freight business in instrastate commerce only; that said defendant railroad company was attempted to be organized under chapter 173 of Hemingway's 1927 Code (sections 7894-7967), but that said chapter does not authorize the organization or chartering of a railroad solely for the purpose of doing an intrastate business in freight only; and that the only railroads which are authorized under the laws of the state of Mississippi to exercise the right of eminent domain are those railroads created, chartered, and organized under the said chapter 173 of Hemingway's 1927 Code.

It was further averred that the appellee railroad company is not a common carrier, and it is not its purpose to become a common carrier; that it is merely using the said charter as a subterfuge and mask under which it is seeking to condemn the appellant's land and obtain the right of way, not for the purpose of constructing a genuine common carrier railroad, but merely, for the purpose of enabling it, under the powers attempted to be granted under its charter, to obtain rights of way over

appellant's land in order to reach the timber of the Turner Lumber Company; that the only object of the said road is to enable the Turner Lumber Company and the Turner Timber Company to construct their logging railroad across appellant's lands for their own private purpose of removing timber belonging to the Turner Lumber Company, and having it manufactured by the Turner Timber Company; and that it was intended to abandon and remove said railroad as soon as it has served the purpose of enabling said parties to remove and manufacture said timber.

It was further averred that it is not the intention or purpose of the appellee ever to build a railroad, either a common carrier or otherwise, from Avera to State Line, Mississippi, as set forth in its application for a charter; that the distance between these points is about thirty miles; that the amount of capital stock fixed by said pretended organization of said railroad company is wholly inadequate to construct any sort of railroad between these points; that it would cost at least one hundred fifty thousand dollars to build a line of railroad from the end of the present logging railroad of the Turner Lumber Company to State Line; that no provision had been made to equip said road; that the line of the proposed road runs through a waste and barren country where the timber, with the exception of the timber of the Turner Lumber Company, has already been cut and manufactured into lumber; that there are no natural resources located along this route other than the timber of the Turner Lumber Company; that there is nothing along this route to furnish any freight, except the timber above mentioned; and that there is no reasonable prospect that there can be any development of the country so as to furnish any substantial amount of freight at any time in the future.

It was further averred that the only railroads at the two termini of said proposed road are interstate railroads doing an interstate business; that under the charter of

the appellee it will be precluded from accepting from or delivering to these roads any freight which has moved in interstate commerce; that under the constitution and laws of this state it is required to receive and transport passengers and freight from other railroads with which it connects; that unless connections are made with the railroads at its termini, there will be no freight whatever which can be moved over the line of the appellee company, if constructed, except the timber of the Turner Lumber Company; that when it acquires the logging railroad now owned by the Turner Lumber Company, as proposed in its application for a charter, it will automatically have physical connection with the Gulf, Mobile & Northern Railroad Company at Avera, and will immediately be required to engage in duties not authorized by its charter, that is, the acceptance and transportation of passengers and freight in interstate commerce.

It was further averred that the conduct of the incorporators of the appellee company in applying for a charter for a railroad corporation, and in pretending to organize such corporation, and in reporting to the state the organization of such corporation, when they had no purpose of building or operating such a railroad as is contemplated by the law authorizing such corporations to be organized, constituted a fraud on their part; that the procuring of said charter, and the holding of said pretended organization meeting, and the filing of said report, were all steps in a fraudulent combination of said Turner Lumber Company and its said stockholders and officers, and the members of the partnership of the Turner Timber Company, to thereby fraudulently obtain powers not within the scope of the legislative intent, and powers which they could not and cannot constitutionally or legally exercise. It was further averred that if the appellee is permitted to condemn said right of way and obtain the appellant's property in the manner stated, the appellant will be deprived of the rights guaranteed to it both under

the constitution of the United States, and the constitution of the state of Mississippi.

There was a great amount of testimony offered by the respective parties bearing upon the conditions and situation prior to and leading up to the filing of the prior proceeding between the appellant and the Turner Lumber Company, and the organization of the appellant railroad company, and upon the physical location of the property of the respective parties to this proceeding and all parties having any property or financial interest therein. The testimony went into great detail in reference to the topography of the country through which the proposed line of railroad would run; the purpose and intent, and good faith of the incorporators in securing a charter for, and the organization of, a proposed common carrier railroad corporation; the cost of the construction of such a railroad, including necessary bridges; the cost of necessary rolling stock and other equipment; the financial worth and responsibility of the said incorporators; the financial arrangements, both present and prospective, that had been made by the incorporators to construct and operate the proposed railroad; the natural resources of the territory to be served by the proposed road, and the amount of freight traffic now available to this railroad; the experience of the incorporators in building and operating short line railroads; the prospect of future development in the business and resources of the territory to be served by the proposed road; the steps that had been taken to secure rights of way over the lands of the owners, other than the appellant, along the proposed line of railroad; and the interest in, and support of, the enterprise that had been manifested by the interested public along and adjacent to the proposed road. Upon this testimony the chancellor held that a fraudulent intent and combination, or lack of good faith, in their proposal and efforts to construct and operate a common carrier railroad, on the part of the incorporators of the

appellee railroad company, was not established, and we are unable to say that the chancellor's finding in this regard is manifestly erroneous, and consequently the decree will not be disturbed upon that ground.

The appellant next contends that the court below erred in holding that the appellee, Avera & Northeastern Railroad Company, was a corporation authorized to exercise the right of eminent domain and take private property thereby; the contention of the appellant on this point being in effect that only railroad corporations which are organized under chapter 118 of the Code of 1906 (sections 4043-4106), chapter 173 of Hemingway's 1927 Code (sections 7894-7967), are empowered to exercise the rights of eminent domain, and that the appellee company is not a corporation organized under the provisions of that chapter. In support of this contention, attention is directed to the fact that the application for a charter recites that the proposed incorporators "desire to form a railroad corporation, under the laws of the state of Mississippi, for the purpose of hauling freight only within the state of Mississippi," and that the proclamation of the governor issued in pursuance of this application authorized and empowered the incorporators "to organize a railroad corporation under the laws of the state of Mississippi, to be known as the Avera & Northeastern Railroad Company, to haul freight only within the state of Mississippi;" and that when organized thereunder the corporation should be "in virtue of such organization a body politic and a corporation under the laws of the state of Mississippi, to haul freight only within the state of Mississippi with all rights, powers, privileges, obligations and duties in that behalf conferred and to be conferred;" and it is argued that under chapter 118, Code of 1906, chapter 173, Hemingway's 1927 Code, a railroad for the transportation of freight only cannot be organized, and consequently the appellee corporation was not, and could not have been, organized thereunder, and

can exercise none of the powers conferred by that chapter.

The provision of chapter 118, Code of 1906, chapter 173, Hemingway's 1927 Code, prescribing how railroad corporations may be organized thereunder, appears as section 4073, Code of 1906, section 7928, Hemingway's 1927 Code, and so far as it is material here it reads as follows:

"Persons desiring the creation and organization of a railroad corporation may prepare an application therefor, in writing, addressed to the governor, in which they shall declare:—

"(a) The names, residence, and post-office of each of the applicants;

"(b) The terminal points of the proposed railroad; and if either or both be without this state, the point at or near which the state line is proposed to be crossed;

"(c) The line of the proposed railroad in this state;

"(d) The name by which the corporation is to be known;

"(e) The time within which it is hoped the railroad will be completed."

Section 4074, Code 1906, section 7929, Hemingway's 1927 Code, provides that:

"Upon the receipt of the application, the governor shall submit the same to the attorney-general, and obtain his opinion, in writing, to be indorsed thereon, whether or not it be in conformity to law. If the opinion be that the application conforms to law, and the governor believes that it is made in good faith and with bona-fide intention on the part of the projectors to construct or cause to be constructed or to operate a railroad, as defined in the application, and there be no valid objection thereto, he shall issue his proclamation authorizing the persons to organize a railroad corporation."

These sections prescribing the method for the creation and organization of a railroad corporation do not re-

quire that an application therefor shall set forth the object and purposes of the organization of any such proposed railroad corporation; but upon the organization of such corporation the powers, rights, and privileges which it is permitted to exercise, and the duties and obligations which are imposed upon it, are prescribed by law, as found in the many constitutional and statutory provisions upon the subject. While the application filed by the proposed incorporators of the appellee company undertook to limit the class of business in which it would be permitted and obligated to engage to that of a common carrier of freight in intrastate commerce, it is manifest that the application was prepared and filed, and the charter granted, under the provisions of the above-quoted section of chapter 118, Code of 1906. The application sets forth in the order prescribed by section 4073, Code 1906, section 7928, Hemingway's 1927 Code, the facts thereby required to be declared, that is: (a) The names, residence, and post office of each of the applicants; (b) the terminal points of the proposed railroad; (c) the line of the proposed railroad in this state; (d) the name by which the corporation was to be known; and (e) the time within which it was hoped the railroad would be completed. The proposed incorporators of the appellee corporation manifestly intended to and did make application for a charter under the provisions of said section 4073, Code of 1906, section 7928, Hemingway's 1927 Code, and the governor's proclamation authorizing the organization of the corporation was manifestly issued under the provisions of section 4074, Code of 1906, section 7929, Hemingway's 1927 Code. There are no other general statutes authorizing the organization of corporations, except chapter 24, Code of 1906 (sections 897-938), chapter 103, Hemingway's 1927 Code (sections 4483-4561), and it is expressly provided therein, by section 897, Code 1906, section 4483, Hemingway's 1927 Code, that corporations for the construc-

tion and operation of railroads other than street railroads may not be created under the provisions of that chapter, and it necessarily follows that the charter granted to the appellee corporation was applied for and granted under the provisions of said chapter 118, Code of 1906; and this charter having been accepted by organizing thereunder and by user of the rights, powers, and privileges thereby conferred, the corporation cannot escape the obligations and duties imposed by law upon railroad corporations. This being true, it will not be necessary to now decide whether the limitation appearing on the face of the application for the charter and the governor's proclamation is valid, or in other words, whether, under chapter 118, Code of 1906, chapter 173, Hemingway's 1927 Code, a railroad may be chartered for the purpose of transporting freight only. The duties and obligations imposed upon railroad corporations are found in the great mass of constitutional and statutory laws on the subject, and these laws are, in effect, written into the charter by operation of law. Having applied for and accepted a charter granted under the provisions of said chapter 118, Code of 1906, all the burdens, duties, and obligations imposed by law upon corporations so organized are imposed upon the appellee, and the constituted authorities of the state are fully authorized and are required to demand and enforce compliance by it with all the statutes fixing such duties and obligations. Ample penalties are provided by law for a failure to discharge any of these duties and obligations, and if, in fact, the law makes it mandatory that railroads shall be carriers of persons as well as freight, the duly constituted authorities of the state are fully empowered to require a full compliance with the duties and obligations imposed in that regard, and to invoke the penalties prescribed for a violation of the regulations and laws governing the operation of common carrier railroads.

The appellant next contends that the appellee railroad company cannot exercise the power of eminent domain for the purpose of securing rights of way, unless and until it has first obtained a certificate of public convenience and necessity from the interstate commerce commission. The appellee railroad company was chartered and authorized to do intrastate business only, and over traffic which is wholly intrastate the interstate commerce commission has no jurisdiction. In the case of Alabama & Vicksburg Railway Co. v. Jackson & Eastern Railway Co., 271 U. S. 244, 46 S. Ct. 535, 70 L. Ed. 928, the supreme court of the United States held that under the provisions of the Transportation Act of 1920 (41 Stat. 456) the interstate commerce commission has exclusive jurisdiction over connections between lines of railroads doing an interstate business, where the establishment of such a junction would imperil or obstruct interstate commerce, and it undoubtedly has the power to prevent a railroad which is located wholly within one state, and licensed to engage in intrastate commerce only, from engaging in interstate commerce, but it can have no jurisdiction over commerce wholly intrastate. This being true, no certificate of necessity and convenience was necessary as a condition precedent to the right to construct and operate this railroad in intrastate commerce only.

In view of the conclusions reached by us as to the organization of this railroad company, and its statutory right to exercise the power of eminent domain, the constitutional objections raised by the appellant disappear. There was no appeal from the action of the court below upon appellee's cross-bill, and therefore the decree will be in all respects affirmed.

Affirmed.