GANDY *et al. v.* PUBLIC SERVICE CORPORATION OF MISSISSIPPI.

(Division B.   March 28, 1932.   Suggestion of Error Overruled, May 9, 1932.)

[140 So. 687.   No. 29919.]

Lotterhos & Travis, of Jackson, for appellant.

Stevens & Heidelberg, of Hattiesburg, for appellee.

**Anderson, J.,** delivered the opinion of the court.

This is an appeal from a judgment rendered by the circuit judge of the district of which Covington county is a part on a vacation hearing under section 1510, Code of 1930, denying appellants' petition for a writ of prohibition. Appellee had begun an eminent domain proceeding—the same to be heard before a court to be organized in the manner required by chapter 26 of the Code of 1930 (section 1480 et seq.), particularly section 1508 of the Code, whereupon appellants obtained a writ of prohibition. There was a hearing on appellants' petition, answer thereto by appellee, and proofs. The prayer of the petition was denied and the temporary writ of prohibition discharged. From that judgment appellants prosecute this appeal.

Appellants' petition for the writ of prohibition set up

three grounds, namely: (1) That appellee is not a public service corporation, not having dedicated its property to public use, but is seeking to condemn the property of appellants (quoting from the petition) ''for the purpose of building and laying thereon a gas line through which it expects to deliver gas from the Jackson gas fields to the city of Hattiesburg in pursuance of a private contract, over which your petitioners and the people generally have no control, ownership, management or interest therein;'' (2) that the appellee is not such a corporation as under the law has the right of eminent domain, ''and any attempt by the legislature to confer upon the said Public Service Corporation of Mississippi, or any other company similarly situated, the right to condemn property for the construction of gas lines to be used in the manner aforesaid is unconstitutional;'' (3) that there is no public necessity for condemning appellants' lands because there is already a gas pipe line running from the Jackson gas fields to Mobile, Alabama, and Pensacola, Florida, by way of Hattiesburg, which could serve the same communities as would be served by appellee, which pipe line parallels the line being constructed by appellee. Appellee answered, denying the allegations of the petition.

The following facts were developed on the trial of the case: Appellee is a domestic corporation; its charter was introduced in evidence. Among other powers granted by the charter are the right to buy, acquire, own, lease, and operate conduits, pipe lines, pumping plants, and other property, equipment, and appliances used in or about the storage, transportation, distribution, and sale of natural gas for fuel, light, and power to cities and towns within and without the state of Mississippi, and to the inhabitants and industries in this state and in other states; to acquire, construct, own, lease, and operate distribution systems within and without cities and towns within and without the state of Mississippi for

the purpose of the distribution and sale of natural gas; to contract with cities and towns in this state and other states for the price or rate to be charged for the delivery of natural gas to such cities and towns within their limits; to buy, sell, and otherwise acquire, transport, market, and distribute natural gas and its products and by-products at retail and wholesale; to buy, own, and lease real estate, rights of way, easements, and licenses for the purposes of the business of the corporation, and to exercise the right of eminent domain when authorized by law.

Appellee company was organized in April, 1931, and immediately after its organization acquired a franchise from the city of Hattiesburg to distribute natural gas to the city and to the inhabitants thereof. Under the terms of the franchise, it was required to build a pipe line from the Jackson gas field to the city of Hattiesburg, and, as a guaranty that it would perform and accept all the provisions of the franchise and build the pipe line and complete the distribution system within one year, it was required by the city to give a bond so conditioned in the sum of one hundred thousand dollars, which bond it executed and delivered to the city before the proceedings in this cause were begun. The evidence showed that it was the purpose and intention of appellee to engage in the distribution to the public generally of natural gas obtained from the Jackson gas field; that it was its purpose and intention to obtain, if it could, franchises for that purpose from every incorporated municipality between the city of Jackson and the city of Hattiesburg; that, in addition to the franchise obtained from the city of Hattiesburg, it had already obtained one from the town of Collins, and had applied for franchises in all the other incorporated municipalities lying between Jackson and Hattiesburg; and that it did not propose to confine its services to the public exclusively in incorporated municipalities, but expected to serve everybody along the

line when it was completed, whether the people served lived in incorporated municipalities or not.

The evidence further showed that there was already in existence a pipe line running from the Jackson gas fields to Mobile, Alabama, and Pensacola, Florida, by way of Hattiesburg, the general direction of which was the same as that of appellee's line in this state; that this line was owned by United Gas Public Service Corporation; that there was in Hattiesburg an artificial gas distributing system owned by Mississippi Service Company, whose franchise had expired; that the Mississippi Service Company had refused to accept from the city of Hattiesburg a franchise at rates considered by city authorities to be reasonable, and had assigned as one reason for it the price which they would be required to pay the United Gas Public Service Corporation for gas to come from its pipe line; that the Mississippi Power & Light Company, under some private contract with the United Gas Public Service Corporation, had been attempting to obtain franchises in some of the municipalities between Jackson and Hattiesburg where appellee was likewise attempting to obtain franchises, and that the rates offered by appellee were about one-half those offered by Mississippi Power & Light Company, which company expected to obtain its supply of gas from the pipe line of United Gas Public Service Corporation.

Appellants' petition for the writ of prohibition was filed under authority of section 1510, Code of 1930, which provides, among other things, that "the legal remedy by way of prohibition is made applicable for the purpose of testing the questions (1) whether the applicant seeking to exercise the right of eminent domain is, in character, such a corporation, association, district or other legal entity as is entitled to the right, and/or (2) whether there is a public necessity for the taking of the particular property or a part thereof which it is proposed to condemn."

We will consider the questions named in the statute,

so far as involved in this case, in the order therein stated. The first question, therefore, is whether the appellee is such a corporation as is entitled, under the law, to exercise the right of eminent domain, and the solution of that question depends on the correct solution of section 1508 of the Code of 1930, which is in this language:

"All companies or associations of persons, incorporated or organized, for the purpose of building or constructing pipe lines and appliances for the conveying and distribution of oil or gas or for the purpose of constructing, maintaining and operating lines for transmitting electricity for lighting, heating and power purposes, are hereby empowered to exercise the right of eminent domain in the manner now provided by law, to build and construct the said pipe lines and appliances along or across highways, waters, railroads, canals, and public lands, above or below grounds, but not in a manner to be dangerous to persons or property, nor to interfere with the common use of such roads, waters, railroads, canals and public lands. The board of supervisors of any county through which any such line may pass, shall have the power to regulate, within their respective limits, the manner in which such lines and appliances shall be constructed and maintained on and above the highways and bridges of the county and all such companies or associations shall be responsible in damages for any injuries caused by such construction or use thereof."

On a casual reading of the statute, it would seem to confer on the companies and associations of persons, therein named, the right of eminent domain for the purpose alone of constructing their pipe lines and appliances along highways, waterways, railroads, canals, and public lands, and that no right to condemn private property is granted by the statute. But looking at the statute as a whole, and the intent and purpose of the legislature in adopting it, and especially the last clause thereof, which

confers on the board of supervisors in any county through which such lines may pass the power to regulate within the county the manner in which such lines and appliances shall be constructed and maintained on and above the highways and bridges, it is manifest that the legislature intended to use the word "and" after the word "law" and before the word "to" in the seventh line of the statute. So construing the statute, that clause of it would read as follows: "are hereby empowered to exercise the right of eminent domain in the manner now provided by law, *and* to build and construct the said pipe lines and appliances along or across highways, waters, railroads, canals, and public lands, above or below," etc. The franchise to construct pipe lines and appliances for conveying and distributing oil, gas, or electricity for the use of the public would be of little value without the right to condemn private property for the purpose. The plain purpose of the statute is to encourage such enterprises. The courts in construing a statute must seek the real intention of the legislature and then adopt such interpretation as will give effect thereto, though the interpretation may be beyond or within the mere letter of the statute, and the true meaning of a statute, when ascertained, will be enforced by the courts, even to the extent of correcting language therein used. Kennington v. Hemingway, 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392; Roseberry v. Norsworthy, 135 Miss. 845, 100 So. 514.

Did the legislature have the constitutional authority to grant the right of eminent domain to pipe lines for the purpose of distributing gas to the public as was attempted by this statute? The answer to this question depends upon whether the supplying of gas to the public for heating and power purposes is such a public convenience as justified the granting of the right of eminent domain to corporations or associations of persons engaged in that business. Under the authorities, an affirma-

tive answer to that question is the only one. Kincaid v. Indianapolis Natural Gas Co., 124 Ind. 577, 24 N. E. 1066, 8 L. R. A. 602, 19 Am. St. Rep. 113; Calor Oil & Gas Co. v. Franzell, 128 Ky. 715, 109 S. W. 328, 36 L. R. A. (N. S.) 456; 20 C. J., p. 583, sec. 67.

Appellant contends that appellee had no power to exercise the right of eminent domain because the franchise granted it by the city of Hattiesburg was void, not having been conferred in the manner prescribed by law. There is no merit in this contention. Appellee, under its charter, has the power of laying pipe lines for the distribution of gas for public purposes; therefore it is a public utility corporation; being such a corporation under the statute, it has the right of eminent domain. Robinson Land & Lumber Co. v. Avera & N. E. R. R. Co., 157 Miss. 700, 128 So. 738. It is wholly immaterial whether appellee has a valid franchise with the city of Hattiesburg or not. Calor Oil & Gas Co. v. Franzell, supra; 20 C. J., p. 583, sec. 67. If it has not a valid franchise with the city, it has the right under its charter to acquire one.

Appellee sought the right to construct telephone and telegraph lines, not as public utilities, but as mere appliances and conveniences to be used in connection with its pipe line. Appellee sought this right in order that its business might be quickly dispatched. We are of opinion that such telephone and telegraph lines are mere appliances within the meaning of appellee's charter and within the meaning of the statute, section 1508.

Appellants contend that there was no public necessity for the laying by appellee of its pipe lines and appliances, because it was shown there was another company, United Gas Public Service Corporation, which had already laid its pipe line from the Jackson gas field to Mobile, Alabama, and Pensacola, Florida, by way of Hattiesburg, paralleling appellee's line from Jackson to Hattiesburg, which corporation has ample facilities for serving the public. It seems that a complete answer to

that contention is that the public policy of this state, as evidenced by its anti-trust statutes, is to encourage, rather than discourage, competition. Under the law, a municipality is wholly without power to grant an exclusive franchise to a public utility company. Sections 2399 and 2401, Code of 1930. This limitation on the power of municipalities also illustrates the public policy of our state that competition shall be encouraged rather than discouraged. In Calor Oil & Gas Co. v. Franzell, supra, the oil company was seeking to condemn a right of way for a gas pipe line over property belonging to Franzell. Its competitor, the Kentucky Heating Company, was made a party defendant to the condemnation proceedings, because it claimed, under a written contract with Franzell, the exclusive right for a pipe line to cross the land. The Kentucky court held that such contract was void as being in contravention of public policy.

We are of the opinion that there is not sufficient merit in appellants' other contentions to call for a discussion by the court.

Affirmed.