The Ohio Oil Company *v.* Fowler
The Ohio Oil Company *v.* Ulmer

Nos. 40783, 40784    February 3, 1956    100 So. 2d 128

*Simrall, Aultman & Pope,* Hattiesburg, for appellant.

*C. W. Sullivan,* Hattiesburg, for appellee.

698

ETHRIDGE, J.

Appellant, The Ohio Oil Company, proposes to operate a common carrier pipeline for condensate and oil from two producing fields to a refinery twenty-five miles away. The question is whether Code of 1942, Section 2780, authorizes it to condemn right of ways over land, including appellees', for the construction of such pipeline; and more particularly, whether Ohio is a company "incorporated or organized for the purpose of building and constructing pipelines and appliances for the conveying and distribution of oil or gas . . ." Code Section 2780 empowers such companies to exercise the right of eminent domain, and to build and construct pipelines.

These two cases were consolidated in the circuit court. In September 1957 The Ohio Oil Company (sometimes called the Company or Ohio) filed applications under Code Section 2780 to exercise the right of eminent domain in a Special Court of Eminent Domain of Lamar County, against appellees Mrs. Florine Ulmer and Thad L. Fowler. Such applications averred that the Company was engaged in constructing a pipeline to convey oil and

gas from the Maxie and Pistol Ridge Oil and Gas Fields in the southern part of Forrest County and the northeastern part of Pearl River County to the new oil refinery of Pontiac Eastern Corporation, located about twenty-five miles away and north of Purvis, Mississippi. Both applications asked for a right of way for appellant's four-inch pipeline through the lands of appellees, and requested that a jury fix the damages to defendants for such taking.

Several days after applications for condemnation were filed, the landowners, appellees Ulmer and Fowler, filed in the Circuit Court of Lamar County separate petitions for writs of prohibition against the Company. Code 1942, Section 2782. The petitions charged that there was no public necessity for the taking of the right of way; that it was not for a public use; and that the Company is not a common carrier or public service corporation which is entitled to exercise the right of eminent domain.

On the hearing the only testimony was by Sam A. Clicke, general superintendent of the Company's pipeline operations in this and other states. Apparently the Maxie and Pistol Ridge Fields are field unit operations, under unitization agreements signed by the various lessee-companies in the field, with Ohio as operator of the units. Pontiac Eastern Corporation contracted to purchase all of the condensate produced from the fields by Ohio. It intends to purchase condensate from other lessee-owners who agree to sell the same to Pontiac Eastern. The condensate becomes the property of Pontiac Eastern upon its passage through Ohio's separation plant in the field. Ohio has filed a tariff rate with the Interstate Commerce Commission for shipments of condensate and oil through the pipeline. There is no state agency controlling and regulating such operations.

Clicke said that his Company was building the line as a common carrier for anyone desiring to ship materials through it under the tariff. The general public has the

right to transport products through the pipeline at the specified tariff rate. Shipments will be accepted from any shipper, but at the present time there is only one purchaser for the condensate to go through the line, Pontiac Eastern. There are now approximately thirty-five individual lessees from whom the production will be run through the line to Pontiac Eastern's refinery. Present production from the Maxie separation plant is one thousand barrels a day. Sixty to sixty-five per cent of that is from Ohio's wells. About forty per cent of the proposed twenty-five mile line is a gathering line, and sixty per cent a transportation or delivery line. Appellees' lands are in the delivery or transportation section of the line. Ohio operates about three thousand four hundred miles of common carrier pipelines in the United States.

The circuit court held that the proposed pipeline was primarily for the personal benefit of a private corporation, and not as a common carrier for the public benefit; that there was no public interest or public necessity involved; and therefore Ohio did not have the right of eminent domain. Final judgments in both cases issued permanent writs of injunction prohibiting the Company and the Special Court of Eminent Domain from proceeding in the condemnation suits.

▆▆▆ Appellant's charter clearly authorizes it to operate its pipeline as a common carrier. Gandy v. Public Service Corporation of Mississippi, 163 Miss. 187, 140 So. 687 (1932). Since there is no state regulatory authority over such pipelines, the common-law definition of common carriers would apply. ▆▆▆ The distinctive characteristic of a common carrier is that it undertakes to carry for hire for the general public. 9 Am. Jur., Carriers, Section 4. Ohio proposes to operate the pipeline as a common carrier for hire, offering the services of its pipeline to the general public. The filing of its tariff with the Interstate Commerce Commission, its

charter of incorporation, and the undisputed testimony of Clicke demonstrate that the proposal is to operate this line as a common carrier for anyone desiring to use the services of the pipeline at the tariff rate.

The principal question is whether, under Code Section 2780, appellant proposes to operate this particular pipeline "for the conveying and distribution of oil or gas." It is undisputed that such products will be conveyed through the line by appellant as a common carrier. Appellees contend, however, that the proposed operation does not also include "distribution." They say that the word "distribution" should be strictly construed so as to mean in this context only the piping of gas to individual homes and places of business. The word "distribution" is one of many meanings and uses. Essentially it means the act of distributing or dispensing, and it has been held synonymous with "disposal." 27 C. J. S. p. 364; 13 Words and Phrases p. 14, et seq. As was stated in Gandy v. Public Service Corporation of Mississippi, supra, ██ █ "The plain purpose of the statute is to encourage such enterprises." We must seek the legislative intention in the light of that purpose. ██ █ We think that the word "distribution" as used in Section 2780 includes substantial and necessary steps in the total process of distribution, and that the construction of a pipeline to carry condensate from these two fields to a refinery is a substantial and necessary step in the process of distributing the commodity transported by the common carrier.

██ █ The effect of the proposed common carrier pipeline will be to give an outlet for the production in these two fields to all of the owners of the production in them, and not just to Ohio. The condensate would be of no value if it could not be marketed. If the ultimate use is public, it is immaterial that the condemnation is sought by an intermediate agency, the pipeline company, which is to sell the product to other processors, marketers, or

consumers. 18 Am. Jur., Eminent Domain, Section 67. ■■■ A company organized to transport condensate or oil by a pipeline is organized for a public use for which private property may be condemned, provided that the facilities of the company are open to the public generally on equal terms. The use is not rendered a private one by the fact that only a few persons will be served at the time the property is sought to be taken. Accordingly, in *Gandy* it was held that it is immaterial that the gas company seeking to secure a right of way to a city in which the gas is to be sold had not secured a franchise from the city. And it has also been held to be immaterial that the company seeking to secure the pipeline right of way has sold all of its gas to another company. 29 C. J. S., Eminent Domain, Section 57. A leading case so holding is Calor Oil and Gas Company v. Franzell, 128 Ky. 715, 109 S. W. 328, 332 (1908), where it was said that it was the legislative intention "that the public interest will be best subserved by affording the owner of the gas an opportunity to sell it upon the market." The petitioner seeking condemnation proposed to sell all of the gas shipped through its pipeline to a single purchaser, the Louisville Gas Company, which in turn would distribute it to the citizens of the city. A recent case in accord is Northeastern Gas Transmission Company v. Collins, 138 Conn. 582, 87 A. 2d 139, 144 (1952).

■■■ Is brief, appellant comes within the terms of Code Section 2780. It is authorized to operate pipelines as a common carrier, and the proposed operation is that of a common carrier. The pipeline will be used for the conveying, and as a substantial and necessary step in the distribution, of the condensate. The facilities of the pipeline will be open to the public generally, and particularly all owners of the production from these fields, on equal terms, at a fixed tariff rate. Hence the circuit court was in error in rendering final judgments in both of these causes prohibiting appellant and the Special Court of

Eminent Domain from proceeding further with the condemnation proceedings. Judgments will be entered here reversing the judgments of the circuit court in both cases, and rendering judgments for appellant dismissing with prejudice appellees' petitions for writs of prohibition.

■■ ■ Appellees filed in this Court pleas in bar of the appeals, which aver that, since the granting of the writs of prohibition by the circuit court, appellant has purchased right of ways around the lands of appellees and has built its pipeline over the purchased right of ways. Hence it is claimed that these appeals have become moot. With that we cannot agree. Appellees brought these suits under Code Section 2782. The issues there and here are whether appellant is in character such a corporation as is entitled to the right of eminent domain, and whether there is a public necessity for the taking of the property. The judicial question on the latter issue is whether the proposed use of appellees' lands is public and in the public interest, and we hold that it is. These are two vital issues of wide public concern which are in controversy now between the parties. Moreover, under Section 2775, where a judgment in an eminent domain suit is rendered against the plaintiff, the defendant may recover of plaintiff all reasonable expenses, including attorneys' fees incurred by him in defending the suit. Also, appellant and the Special Court of Eminent Domain, in the absence of a final decision by this Court, will be under permanent writs of prohibition. Somewhat similar to the present claim that the case is moot was that in The California Company v. State Oil and Gas Board, 200 Miss. 824, 845, 27 So. 2d 542 (1946). The pleas in bar of appeal are overruled.

On the merits, reversed and judgments rendered for appellant; pleas in bar of appeal overruled.

*Roberds, P. J.,* and *Hall, Lee* and *Arrington, JJ.,* concur.