PATTERSON, Chief Justice,
for the Court:
This is an appeal by the State of Mississippi from a decree of the Chancery Court of Sunflower County allowing Michigan Wisconsin Pipeline Company compensation for lowering its pipelines necessitated by the construction of a drainage canal over its alleged easement across state lands.
In 1955 the Chairman and a commissioner of the Board of Commissioners of the Mississippi State Penitentiary executed and delivered a right-of-way instrument to American Louisiana Pipeline Company to construct and maintain a pipeline across penitentiary land for which the company paid $406. However, the board failed to authorize through its minutes the execution of that instrument. The pipeline was constructed in 1956 and the penitentiary was paid for crop damages. '
Prior to 1966 American Louisiana Pipeline Company merged into and became known as Michigan Wisconsin Pipeline Company (hereinafter Michigan) which is a corporation organized under the laws of Delaware and not qualified to do business in Mississippi. In 1966 pursuant to the previous agreement a second transmission line was constructed parallel to the original for which Michigan paid the penitentiary $405 plus additional sums for damages. By order on its minutes of February 14,1966, the board authorized the acceptance of these payments, referring to the 1955 transaction as an “easement.”
Since the construction and completion of the pipelines, Michigan has transported natural gas from the Louisiana Gulf Coast to terminals in other states. Its sole business activity in Mississippi is the interstate transmission of natural gas.
*686 In accord with legislative enactment to make the farming operation on penitentiary lands profitable, the Mississippi Cooperative Extension Service was awarded a lease in 1974. As a result it recommended to the legislature the lands be improved by adequate drainage because Black Bayou, which flowed through the penitentiary lands, occasionally flooded the area which drained poorly, adversely affecting the farming operations, sewage disposal and use of the roads.
To alleviate these problems the state proposed a drainage canal which would traverse the underground pipelines and requested appellee to lower its pipelines. When Michigan refused to do so without compensation, the state filed a petition in chancery to cancel the 1955 right-of-way agreement, to adjudicate that Michigan had no authority to maintain its lines on penitentiary property, and alternatively, if the court should find Michigan was authorized to maintain its pipelines, then the court mandate they be lowered below the depth of the canal. Michigan denied the allegations in its answer and filed a cross bill seeking an injunction against the state or damages in the alternative. Prior to trial, the parties stipulated that Michigan would lower its transmission lines in 1976 at its expense, but in the event the state received an adverse judgment the Extension Service would recommend an appropriation from the legislature not in excess of $193,387 to pay the actual cost of the operation. Further, if the decision were adverse to Michigan, lowering the lines would be at its expense.
From an adverse decree the state appeals, raising the following issues:
1. Are penitentiary lands public?
2. If so, did Michigan acquire a property interest across the lands?
3. And, if so, which party is liable for expenses incurred in lowering the pipelines?
The first two issues, if answered affirmatively, ultimately raise a conflict of rights between the exercise of the state’s statutory and police powers and the constitutional prohibition against taking private property without compensation.
The state argues that the penitentiary lands in question are not public and hence do not come within the scope of Mississippi Code Annotated section 2780’s (1942)[1] grant of a crossing right. Essentially, the argument is that by “public lands” the legislature meant all state lands not held or reserved for any governmental or specific public purpose and penitentiary lands are accorded a definite purpose and therefore are not public. In the first instance the meaning of public lands must be defined in the context of the statute in which it appears. Here the words of the statute themselves belie such an interpretation. Part of the statute which grants the right specifies that the grant must not interfere with the common use of the lands. Clearly, crossing of state land was contemplated by the legislature when a restrictive clause was expressly inserted authorizing crossing but prohibiting interference with the common use. In Willmut Gas & Oil Company v. Covington County, 221 Miss. 613, 71 So.2d 184 (1954), sixteenth section lands were held to be public although they were held in trust for the benefit of the schools. And, in Gandy v. Public Service Corporation of Mississippi, 163 Miss. 187, 140 So. 687 (1932), in discussing this section as it concerned utilities crossing public lands, we held:
. The plain purpose of the statute is to encourage such enterprises. The courts in construing a statute must seek the real intention of the Legislature and then adopt such interpretation as will give effect thereto .
(163 Miss. at 197, 140 So. at 689)
And see State v. Cumberland Tel. & Tel. Co., 52 La.Ann. 1411, 27 So. 795 (1899). We are of the opinion the penitentiary lands within the contemplation of Section 2780 are public.
*687 The next question is whether Michigan has a valid property interest in these public lands. The state’s grant is encompassed in an instrument of December 2,1955, entitled “Right of Way Contract.” The printed form, prepared by Michigan, specified:
For and in consideration of Four Hundred Six and No/100 Dollars ($406.00) receipt of which is hereby acknowledged the undersigned Frank G. Whitaker, Commissioner, Chairman, Board of Commissioners, Parchman Penal Farm, and C. N. Dorrough, Commissioner (hereinafter called “Grantor” . . ) for themselves, their heirs, executors, administrators, successors and assigns, hereby grant, bargain, sell, convey and specially warrant to American Louisiana Pipe Line Company [Predecessors of Michigan Wisconsin Pipeline Company] a Delaware Corporation, its successors and assigns (hereinafter called “Grantee”), a right-of-way and easement to construct, lay, maintain, operate, alter, repair, replace, change the size of, move and remove a pipe line or pipe lines and appurtenances thereto for the transportation of oil, gas or other substances which can be transported through a pipe line, the grantee to have the right to select, change or alter the route or routes thereof over, through, upon, under and across the following real estate .
The land involved was described as Section 15, Township 24 North, Range 4 West, Sunflower County, State of Mississippi, and the instrument continued:
Should more than one pipeline be laid under this grant at any time by Grantee or its assigns, Grantor shall be paid as consideration therefor a sum equivalent to One Dollar ($1.00) per linear rod of each additional line.
The Grantor shall have the right fully to use .and enjoy the surface of the said premises except for the purposes herein granted to Grantee, provided that the Grantor shall not construct or permit to be constructed any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of any pipe line or appurtenances constructed hereunder and will not change the grade of such pipe.line. Grantee hereby agrees to bury all pipe lines constructed hereunder below ordinary plow depth.
Grantee agrees to pay to the owner of said land and to any tenant or lessee thereof, as their respective interests appear, any damages to fences, growing crops and timber which may be caused by constructing, maintaining, altering, repairing, replacing, changing the size of, moving or removing the pipe line and appurtenances constructed hereunder.
TO HAVE AND TO HOLD said right of way unto said Grantee, its successors and assigns forever.
At that time the apparent authority for the transaction was Mississippi Code Annotated section 2780 (1942) which provides in pertinent part:
§ 2780. Right of eminent domain granted to pipe lines.
All companies . . . incorporated for the purpose of building . pipe lines for the conveying and distribution of oil or gas . . . are hereby empowered to exercise the right of eminent, domain . . . and to construct the said pipe lines across . . . public lands . but not in a manner . to interfere with the common use of such . public lands. . . . [A]nd all such companies . . . shall be responsible ... for any injury caused by such construction or use thereof. (Emphasis added.)
At the outset we agree with the state’s contention that the original contract was of doubtful validity because it was not authorized or recorded on the minutes of the Penitentiary Commission, as well as the contention that at the time of the execution of both the 1955 and 1966 transactions there was no statutory authority placing the power to convey an easement across public lands in the Penitentiary Commission.
Neither contention, however, is disposi-tive of the issue of whether Michigan has a *688 valid property interest in the penitentiary land traversed by its lines. The contention that the commission had no power to convey an easement, while true, directs itself to the nature of the interest acquired by Michigan, if any. Similarly, while there is serious doubt as to the validity of the first contract, subsequent transactions and the wording of the enabling statute involved must also be examined to determine whether a valid property interest exists in Michigan.
There is no question but that Section 2780 authorizes pipeline companies to cross public lands. It is, however, not clear how the statute becomes operational, or the mechanics of obtaining initial state permission for use of its lands. As pointed out in Willmut, we held the statute to be largely self-executing as to the grant of the right. We now find additionally persuasive the letter opinions[2] of the Attorney General which express the view that pipeline companies have the right to occupy public lands for transmission purposes without formal acts of the state. In Willmut, supra, we approve the construction of pipelines by a utility company across sixteenth section lands although instruments authorizing the crossing were not first obtained from either the county or the state. We held the right came from Section 2780 without prior authorization from the state or its agency. The decision does require, however, negotiations with the proper authorities as to the restrictions of the statute, but this does not involve the granting clause, but rather the precise location and safety of the passage, consideration and damages.
Additionally, conceding the doubtful validity of the original contract, we note the second transaction was recorded in the minutes and both transactions were apparently entered in good faith and there has been long and continued occupancy by Michigan in reliance on the agreements. Based upon the self-executing nature of the statutory grant, the good faith negotiations and reliance on them, we are of the opinion Michigan has a valid property interest in the penitentiary lands traversed by its lines.
Having concluded there is a valid property interest in Michigan, the question becomes, does that interest prevail over the exercise of the police power of the state in the construction of the drainage canal to promote the public welfare? The resolution of the conflict depends upon several factors, including the nature of the property interest and the legitimate need for the exercise of the police power.
The authority for crossing state lands comes from Section 2780 which we have heretofore held to be self-executing as to the grant. However, that right is “subject to the restrictions stated in [the] statute.” Willmut, supra. The restriction applicable is that pipelines across public lands must be constructed “not in a manner ... to interfere with the common use of such . public land.”
We think the legislature in its wisdom foresaw the grant might interfere with the “common” or public use of the state’s lands and properly cautioned the interest conveyed was subject to the common use. We are of the opinion Michigan’s interest is founded in the statute and it necessarily follows that it is subject to the statute’s limitations. Willmut, supra. We conclude Michigan has a property interest in the lands traversed by its lines but subject to non-interference with the state’s dominion over the land for the public welfare.
It is argued, however, that Willmut, which spoke of the grant authorized by Section 2780 as a “right-of-way only, being a revocable easement,” has been diluted by Southern Bell Telephone & Telegraph Company v. City of Meridian, 241 Miss. 678, 131 So.2d 666 (1961), and its holding has no present value because it was limited to sixteenth section lands. Bell did state the “revocable easement” of Willmut was dicta and “non-decisional,” but this language, in *689 our opinion, destroyed only the characterization of the property interest conferred by Section 2780, leaving the interest, although without name, unimpaired. Actually, the language of Bell was employed to emphasize a contractual property right of greater dignity than a revocable easement. See City of Meridian v. Southern Bell Tel. & Tel. Co., 256 F.2d 83 (5th Cir. 1958). In our opinion Bell, supra, has no present application because it upholds the property right rather than destroying it.
The Willmut decision concluded as follows:
We confine our decision to that necessary to be decided. We consider only the application of Sec. 2780 and Miss. Constitution §§ 95 and 211 to a pipeline right-of-way over sixteenth section lands. We do not consider any question with reference to the application of Sec. 2780 and these constitutional sections to public lands other than school lands. (221 Miss. at 634, 71 So.2d at 191)
Doubtless this language was an attempt to restrict the opinion to sixteenth section lands. If effective for that purpose, which we do not decide, we nevertheless find it presently persuasive to the interpretation of Section 2780 as authorizing a permissive use of public land for pipeline purposes.
In reaching the central question of whether the property interest of Michigan must yield to the police powers of the state, we think it might be helpful to emphasize that this is not a situation where a company has obtained an easement over private lands subsequently acquired by the state but rather involves a right-of-way over state-owned public lands in which readjustments are required to meet a legitimate public need not originally contemplated. It does not involve a “taking” in the sense of an ultimate condemnation of property but is more related to a continuing permissive use granted by the state. In balancing these interests we are of the opinion the state has a legitimate public interest in promoting the general welfare by a canal to make more profitable its land and that the property interest of Michigan is subservient thereto. Its lines do interfere with the common interest and must yield, but in doing so Michigan is not denied its right-of-way, nor is it required to move from the present location. The only imposition upon it, not inconsiderable, is the expense of lo w-ering its lines.
In Chicago, B. & Q. R. Co. v. Illinois ex rel. Grimwood, 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596 (1906), the United Stated Supreme Court held proper the exercise of the state’s police power to require a railroad to build a new bridge at its expense where necessary to accommodate an expanded drainage system for the public. When confronted with the argument that the purpose of the drainage was “(to) reclaim the lands of the district and make them tillable or fit for cultivation,” and therefore was not related to the public health, it was nevertheless held a proper exercise of the police powers, the Court stating:
We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety. [Citations omitted] (200 U.S. at 592, 26 S.Ct. at 349, 50 L.Ed. at 609)
Similarly, the drainage of the penitentiary lands is its reclamation for increased cultivation and, hopefully, profit. Moreover, the state farm is operated by the Extension Service in this agricultural area and serves an additional public need as an experimental enterprise for the benefit of the state farmers. Also, the drainage, from the evidence, would improve the sewage system at the penitentiary, thereby serving a genuine public purpose.
We conclude Michigan has a property interest in the penitentiary lands subject to the restriction of not interfering with the state in its lawful use of the same. The statutory grant and its restriction are continuing notwithstanding the provisions of written documents whereby the grant is sought to be exercised. Under this circumstance we are of the opinion the expense of lowering its pipelines belongs to Michigan, the appellee, and the trial court erred in not so adjudicating.
*690 For future consideration of similar cases, we make it clear that the permitted exercise of the police powers of the state, as discussed in this opinion, apply primarily to the facts of this particular case. All cases are different and the general police powers of the state should be exercised according to each individual set of facts.. The exercise of the power should not be arbitrary nor oppressive and should be exercised in accordance with corresponding public necessity and in consideration of any constitutional or statutory limitation on such power.
REVERSED AND RENDERED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
APPENDIX “A”
Section 2780, Mississippi Code Annotated (1942)
All companies, associations of persons, municipalities, associations of municipalities, or natural gas districts, incorporated or organized for the purpose of building or constructing pipe lines and appliances for the conveying and distribution of oil or gas or for the purpose of constructing, maintaining and operating lines for transmitting electricity for lighting, heating and power purposes, are hereby empowered to exercise the right of eminent domain in the manner now provided by law, and to build and construct the said pipe lines and appliances along or across highways, waters, railroads, canals, and public lands, above or below grounds, but not in a manner to be dangerous to persons or property, nor to interfere with the common use of such roads, waters, railroads, canals and public lands. The board of supervisors of any county through which any such line may pass, shall have the power to regulate, within their respective limits, the manner in which such lines and appliances shall be constructed and maintained on and above the highways and bridges of the county and all such companies, associations of persons, municipalities, associations of municipalities or natural gas districts shall be responsible in damages for any injury caused by such construction or use thereof.
APPENDIX “B”
STATE OF MISSISSIPPI Department of Justice JACKSON
November 8, 1933
Hon. R. D. Moore
State Land Commissioner
Jackson, Mississippi
Dear Sir:
This is in further reference to the petition from the United Gas Public Service Company, addressed to the Governor, Land Commissioner and Attorney General, requesting that these officials recognize or approve its right to occupy certain public lands for pipe line purposes.
It appears that some lands in the state through which its pipe lines run have been sold to the state for non-payment of taxes and title has matured in the state and this company wants what appears to be an official recognition of its right to continue to use the land for this pipe line purpose.
You are advised that I do not find any statutory authority for these officials to grant any such permit and without the authority to do so such a permit would serve no legal purpose. In view of Chapter 26 of the Mississippi Code of 1930, and especially Section 1508, it is my opinion that this company has a right to occupy the public lands for this purpose without any formality in the way of recognition or approval by the state. The above section gives the company the right to use the public land for this purpose. In view of that section, the state could not complain of such use. A purchaser from the State could not complain because he buys the land in view of said section of the Code and his rights therein would be limited accordingly.
I am herewith returning the petition for the permit.
Yours very truly
/s/ Greek L. Rice
ATTORNEY GENERAL
*691 DEPARTMENT OF JUSTICE
State of Mississippi JACKSON
May 11, 1934
United Gas Public Service Company
Jackson
Mississippi
Gentlemen:
This has reference to your request to the State Mineral Lease Commission to grant your company the right or authority for the laying of gathering lines across a small portion of the State Insane Hospital property in Hinds County.
You are advised that I do not find any statutory authority for this Commission to grant any such permit or authority and without the right to do so on the part of the commission such a permit would serve no legal, purpose. However, in view of Chapter 26 of the Mississippi Code of 1930, and especially Section 1508, it is my opinion that this company has a right to use the public lands for the purpose mentioned by you without any formality in the way of recognition or approval by the Commission. The above section gives the company the right to use the public lands for such purposes. In view of that section, the State could not complain of such use.
Yours very truly
(signed) Greek L. Rice
ATTORNEY GENERAL
STATE OF MISSISSIPPI
DEPARTMENT OF JUSTICE JACKSON
December 15, 1937
United Gas Pipe Line Company
Jackson
Mississippi
Attention of Mr. G. L. Gilbert
Gentlemen:
I have your letter of December 13, 1937, enclosing a blue print showing the location of a proposed 4" pipe line that will cross state owned property for the purpose of withdrawing gas from the Martin Heirs # 1 Well, located in the N-Vfe of SW-Vi of NE-Vi, Section 25, Township 6 North, Range 1 East, Hinds County, Mississippi.
You are advised that under Section 1508, Mississippi Code of 1930, it is my opinion that you are thereby given the right to construct, operate and maintain gas pipe lines over and across these public lands, under the terms and conditions stated in that chapter.
Yours very truly,
(Signed) Greek L. Rice
ATTORNEY GENERAL

. See Appendix “A”. Repealed effective from and after January 1, 1972. Readopted with modifications as Mississippi Code Annotated (1972) § 11-27-47.

. Letter to Honorable R. D. Moore, State Land Commissioner, of November 8, 1933, to United Gas Public Service Company of May 11, 1934, and to United Gas Pipeline Company of December 15, 1937. Appendix “B".