THE STATE, EX REL. ALLERTON PARKING CORP. ET AL., APPELLEES,
*v.* CITY OF CLEVELAND ET AL., APPELLANTS.

(No. 39910—Decided May 18, 1966.)

*Messrs. Arter, Hadden, Wykoff & Van Duzer* and *Mr. William S. Burton,* for appellees.

*Mr. Bronis J. Klementowicz* and *Mr. Daniel J. O'Loughlin,* for appellants.

*Per Curiam.* On the grounds and for the reasons expressed by Silbert, C. J., in his opinion in *State, ex rel. Allerton Parking Corp.,* v. *City of Cleveland,* 4 Ohio App. 2d 57, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

ZIMMERMAN, MATTHIAS, O'NEILL and SCHNEIDER, JJ., concur.
TAFT, C. J., HERBERT and BROWN, JJ., dissent.

TAFT, C. J., dissenting. As recognized by all parties, the city of Cleveland has made an agreement to sell to relators certain urban renewal real property (that is real property acquired by the city in furtherance of an authorized urban renewal project) under stringently restrictive enforceable conditions as to the use of such property, which conditions are designed to promote the public welfare.

The question to be determined is whether the sale provided for in such an agreement may be made without complying with Sections 101 and 102 of the Charter of the City of Cleveland.

Admittedly, Section 721.28, Revised Code, cannot authorize such a sale to the extent that that statute conflicts with provisions of the Charter of the City of Cleveland.

So far as pertinent, Sections 101 and 102 of the Cleveland City Charter read:

"Section 101. * * * The Commissioner of Purchases and Supplies shall make all purchases for the city in the manner provided by ordinance, and shall, under such regulations as may be provided by ordinance and by direction of the Board of Control, sell all property, real and personal, of the city not needed for public use or that may have become unsuitable for use or that may have been condemned as useless by the director of a department. * * *"

"Section 102. Before making any purchase or sale, the Commissioner of Purchases and Supplies shall give opportunity for competition, under such rules and regulations as the council shall establish * * *."

A reading of the ordinances relied upon by relators makes it apparent that the council was not thereby establishing and had not theretofore established any rules or regulations under which there could reasonably be said to be any opportunity for competition with respect to the real estate being disposed of to relators pursuant to those ordinances.

It is contended, and the Court of Appeals held, that where urban renewal real property is to be sold subject to conditions enforceable by the city and requiring its continued use to promote the public welfare, such property does not thereby become property "not needed for public use" within the meaning of the hereinbefore quoted provisions of the Cleveland charter.

If we agree with that contention, it does not follow that the interests acquired by relators in that real property, even though sold subject to such conditions, do not come within the words of the charter, "all property, real and personal, of the city not needed for public use." In our opinion, a purchaser of such interests would acquire "property" of the city, either "real or personal," and what he acquired, after deducting any attributes of ownership retained by the city by reason of the conditions imposed upon the purchaser, would represent what the city no longer "needed for public use."

Hence, we see no escape from the limitations of Sections 101 and 102 of the Cleveland City Charter.

We recognize that it might be desirable, as relators contend and the Court of Appeals held, to exempt the sale of urban renewal real property from the home-rule limitations of Sections 101 and 102 of the Cleveland City Charter. However, this court does not have the power to amend or rewrite a city charter. If a change is to be made in the Charter of the City of Cleveland, it should be made by vote of its people as provided therein.

HERBERT and BROWN, JJ., concur in the foregoing dissenting opinion.