252 So.2d 75

**David D. JOHNSTON et al.**

v.

**ALABAMA PUBLIC SERVICE COMMISSION et al.**

**3 Div. 470.**

Supreme Court of Alabama.

June 30, 1971.

Rehearing Denied Sept. 9, 1971.

Pruitt & Pruitt, Livingston, Hill, Hill, Stovall, Carter & Franco, and C. Knox McLaney, Montgomery, for appellants.

418

Rushton, Stakely, Johnston & Garrett, Montgomery, for appellee Hunt Oil Co.

PER CURIAM.

This is an appeal from a decree approving and affirming an order of the Alabama Public Service Commission and holding Tit. 10, § 74, Code 1940 constitutional.

Appellee Hunt Oil Company filed a petition in the Public Service Commission under § 74 for a certificate to permit it to acquire rights of way by condemnation for the construction of a pipeline. After an adversary hearing, the certificate was issued. Appellants appealed to the Circuit Court of Montgomery County and contended that § 74 is unconstitutional. The circuit court affirmed and the cause was appealed to this court.

The facts and contentions of the parties are contained in the dissenting opinion of Bloodworth, J., and need not be here repeated. The sole question presented to us

is whether § 74 violates Sec. 23 of the Constitution of Alabama of 1901 when applied to the proposed right of way for the pipeline. A majority of the court for this case holds that § 74 of Tit. 10 is constitutional as applied to the facts of this case.

One of the fundamental principles of our political system is that a legislature possesses all power except as it is limited or restricted by the state or federal constitutions. Mangan v. State, 76 Ala. 60; State ex rel. French v. Stone, 224 Ala. 234, 139 So. 328; Hall v. Underwood, 258 Ala. 392, 63 So.2d 683; Opinion of the Justices, 263 Ala. 151, 81 So.2d 688; Young v. State, 283 Ala. 676, 220 So.2d 843.

It is equally well established that the right of eminent domain antedates constitutions, and is an incident of sovereignty, inherent in and belonging to every sovereign state. Steele v. County Commissioners, 83 Ala. 304, 3 So. 761; Denson v. Alabama Polytechnic Institute, 220 Ala. 433, 126 So. 133; Gerson v. Howard, 246 Ala. 567, 21 So.2d 693; Blanton v. Fagerstrom, 249 Ala. 485, 31 So.2d 330.

There is no question in this case of a conflict with the federal constitution, so we must ascertain if the plenary power of the legislature is limited or restricted by our state constitution. If it is restricted, the restriction is found in Sec. 23 of the Constitution of 1901, the applicable portion of which reads:

"That the exercise of the right of eminent domain shall never be abridged nor so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use in the same manner in which the property and franchises of individuals are taken and subjected; but private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; provided, however, the legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner; * * *."

To the first semicolon, the right of eminent domain of the sovereign is reiterated, and it is clearly stated that it includes property of corporations as well as individuals. The next clause requires just compensation for any private property taken. This is the first restriction. The next clause contains a second restriction, that private property shall not be taken for private use or for the use of nonmunicipal corporations, without the consent of the owner. But there is a proviso that is entitled to just as much consideration and applicability as the two restrictions which precede it. The proviso is repeated because it is of utmost importance: "* * * provided, however, the legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner; * * *."

The legislature, under the proviso, saw fit to grant the right to *persons* in Tit. 19, § 56, Code 1940, by granting a land-locked owner access to a public road. In Harvey v. Warren, 212 Ala. 415, 102 So. 899, the statute was attacked as violating Sec. 23 of the Constitution of 1901 and Sec. 1 of Art. 14 of the Constitution of the United States. This court upheld the constitutionality of the statute. The legislature granted similar rights to mining, manufacturing and quarrying *corporations* in a provision that has remained unchanged in the Codes of 1907, 1923 and 1940. Tit. 10, § 89, Code 1940.

In Steele v. County Commissioners, 83 Ala. 304, 3 So. 761, the "material question presented by the record involves the constitutionality of sections 1676 and 1677 of Code of 1876, which provide for and regulate the establishment of private roads." The proviso there was substantially the same as before us in the instant case. The court said, in reference to what is now Sec. 23 of the Constitution of 1901:

"* * * It will be observed that, in respect to the power to secure to persons and corporations the right of way over the lands of other persons and corporations, the provision in the preceding constitutions is unchanged. The purposes of this section are unmistakable. It is intended to prohibit the abridgment of the exercise of the right of eminent domain, in reference to the property and franchises of corporations; to require just compensation in all cases; and to prevent private property from being taken for private use, or for the use of corporations other than municipal, without the consent of the owner, *qualified by the proviso to the section.* [Emphasis supplied]

\* \* \* \* \* \*

"* * * The proviso in the section of the constitution serves the natural and appropriate office of restraining or qualifying the preceding general provisions; *and its operation is to except the right of way over the lands of persons and corporations from the general prohibition against taking private property for private use, by impliedly declaring the same to be a public use.* The conclusion is that the legislature may provide for the establishment of private roads, and that private property to the extent of the right of way, may be taken for such purpose upon just compensation being first made, and that the enactment of sections 1676 and 1677 is a constitutional exercise of the power. * * *" [Emphasis supplied]

This court, per Clopton, J., evidently thought the constitutional question required

decision even though it was held that certiorari was not the proper remedy to test the "constitutional authority to establish such road over the land of another without the consent of the owner."

Later, the constitutionality of Section 3485, Code 1907 (the precursor of Tit. 10, § 74), was before the court in Sloss-Sheffield Steel & Iron Co. v. O'Rear, 200 Ala. 291, 76 So. 57, where it was said:

"* * * The correct doctrine is that thus stated in Lewis on Em.Dom., at section 374:

"'Strictly speaking, the Legislature cannot delegate the power of eminent domain. It cannot divest itself of sovereign powers. But, in exercising the power, it can select such agencies as it pleases, and confer upon them the right to take private property subject only to the limitations contained in the Constitution. Accordingly it has been held that the right may be conferred upon corporations, public or private, upon individuals, upon foreign corporations, or a consolidated company composed in part of a foreign corporation, and upon the federal government. Such has been the common practice since the Revolution, and the right to do so has never been a matter of serious question; and it may be regarded as settled law that, in the absence of special constitutional restriction, it is solely for the Legislature to judge what persons, corporations or other agencies may properly be clothed with this power.'

"There is no provision in our Constitution declaring or enforcing a restraint of the character indicated. Indeed, the proviso, in section 23 of the Constitution, through the employment of the disjunctive or, commits to the Legislature a discretion to secure to either persons or to corporations rights of way over the lands of others. The designation by the Legislature of one or many that may, as an agent or agents of the sovereign, exercise the right of eminent domain does not effect to confer or to grant any exclusive

special privilege or immunity, within the purview of section 22 of the Constitution of 1901. *When the Legislature, expressing the sovereign will, designates and commissions the agent to exercise the right of eminent domain, the fundamental theory is that a public purpose and the public welfare will be promoted and effected through the activity of the agent so designated by the authority competent to declare the sovereign will.* The advantage that may and does accrue to the one or to the many thus designated to serve the public purpose is secondary and incidental only to the public benefit that is always supposed to be derived from the exercise of the power of eminent domain. [Emphasis supplied]

\* \* \* \* \* \*

" \* \* \* Our conclusion, therefore, is that the statute (section 3485) is valid as written; that the fact that its authority is not available to individuals or associations of individuals other than corporations does not render it invalid. \* \* \* "

In that case also, the court held that a partnership was not covered by § 3485, but all the justices concurred in the opinion that the statute did not violate Sec. 22 of the Constitution of 1901.

It is true that Tit. 10, § 74, Code 1940, is broader than § 3485, Code 1907, having been amended in 1915 and in 1932. One of the amendments specifically added "pipe lines."

Another amendment provided: "The acquisition of rights of way for mining, manufacturing, industrial power and quarrying purposes as provided herein, is hereby declared to be a public use and necessary to the development of the state." The legislature was evidently putting into the statute the expressions of this court (emphasis supra) as to the determination of a public use.

In view of this we cannot agree that § 74 is unconstitutional, because it is the duty of a court to sustain an act unless it is convinced beyond a reasonable doubt of its unconstitutionality. Reed v. Alabama Public School and College Authority, 284 Ala. 22, 221 So.2d 381; Brittain v. Weatherly, 281 Ala. 683, 207 So.2d 667. We are not so convinced.

The wisdom of the legislature in broadening the statute may be questionable, but courts have nothing to do with the wisdom, policy or expediency of a statute. These are matters purely of legislative deliberation and cognizance. City of Mobile v. Yuille, 3 Ala. 137; Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 [5], 4A Ala.Dig., Constitutional Law, ☞70(3). We have held that courts cannot and will not interfere with the discretion vested in other units or branches of government, except in case of fraud, corruption, or bad faith, the equivalent of fraud. Finch v. State, 271 Ala. 499, 124 So.2d 825, and cases there cited.

It appears that Tit. 10, § 74 gives a landowner more protection than did the original statute which was considered in the *O'Rear* case. Prior to the 1932 amendment, which included "pipe lines" among other additions, the corporations were forbidden to start condemnation proceedings "under this section until the approval of the public service commission is first obtained," (§ 7019, Code 1923). There was no provision for a hearing and for aught appearing, the "approval" could be given on an ex parte basis. But that same 1932 amendment provided the hearing now included in Tit. 10, § 74. Now the corporation must obtain a certificate from the Public Service Commission before commencing condemnation proceedings. Thirty days' notice must be given and, after a hearing, the Commission must be of the opinion that "the proposed use would be in the furtherance of industrial development by such company \* \* \* in this state."

In the instant case, an adversary hearing was had before the Commission "and each of the Protestants was given full opportunity and was heard by the Commission." The certificate of the Commission goes into

considerable detail to show why the certificate should be issued and found that "the use of the proposed pipeline is in furtherance of industrial development in this State," and that each and every requirement of Tit. 10, § 74 "has been met and proved by Applicant."

Section 74 provides that "the right to condemn herein given shall not include the right to condemn any private residence, nor the outhouses, garden, nor orchard within the curtilage of any private residence. The acquisition of rights of way for mining, manufacturing, industrial power and quarrying purposes as provided herein, is hereby declared to be a public use and necessary to the development of the state."

The opinion and certificate of the Public Service Commission shows that appellant produced the first oil well in Alabama in 1944 in Choctaw County and later built the first oil refinery plant in this state at Tuscaloosa, and that "it was conceded by all witnesses that the industrial development planned by Applicant would be of benefit to the State of Alabama."

The legislature has historically approved and encouraged the industrial development of Alabama. The oil and gas industry is comparatively new in Alabama, but the rights and privileges granted under § 74 are equally applicable to this new industry whenever the statutory provisions are met. We should not hold that an oil refinery cannot be considered as coming within the statute merely because there was no oil industry or no oil refining plant in Alabama when the statute was last amended in 1932.

We agree with the Public Service Commission that the undisputed evidence in this case shows that "the use of the proposed pipeline is in the furtherance of industrial development in this State."

We find no error in the trial court's decree holding § 74 to be valid under Sec. 23 of the Constitution and as applied to the facts of the instant case.

In this case, McCall, J., recused himself because the proposed pipeline would go through property owned by him. The court was divided four to four and under the provisions of Tit. 13, § 15, Code 1940, as amended, this fact was certified to the governor and he appointed Honorable Sam W. Pipes, III, a member of the bar, to sit as a judge of this court in the determination of the cause.

Affirmed.

HEFLIN, C. J., and MERRILL and MADDOX, JJ., concur.

LAWSON, J., concurs specially.

PIPES, J., concurs in the result.

SIMPSON, COLEMAN, HARWOOD and BLOODWORTH, JJ., dissent.

LAWSON, Justice (concurring specially).

The case of Sloss-Sheffield Steel & Iron Co. v. O'Rear, 200 Ala. 291, 76 So. 57, contains language which is subject to the construction that legislation of the kind here under consideration would not be violative of § 23 of the Constitution.

The Legislature, in enacting the subject legislation, may well have relied upon that language in the Sloss-Sheffield case.

Many years have elapsed since the subject legislation was enacted and no doubt many rights-of-way have been acquired thereunder.

The opinion of Mr. Justice Bloodworth is brilliantly written. It demonstrates laborious and penetrating research. It is most persuasive. But the conclusion reached therein would, in my opinion, jeopardize all such previously acquired rights-of-way.

In view of the language in the Sloss-Sheffield case, supra; the legislation thereafter enacted; the length of time which has elapsed since the enactment of that legislation; and the rule that courts must indulge all presumptions and intendments in favor of the constitutionality of a statute

(Opinion of the Justices, 281 Ala. 50, 198 So.2d 778; Central of Georgia R. Co. v. Groesbeck & Armstrong, 175 Ala. 189, 57 So. 380); I am constrained to concur in the Per Curiam opinion.

PIPES, Justice (concurring in the result).

I concur in the result. I am convinced that Sec. 23 of the Constitution of 1901 does not restrict the legislature's power to give persons and corporations the authority to institute eminent domain proceedings, and that the power given certain corporations, which would include appellee, to secure rights of way, including easements for pipelines, in § 74 of Tit. 10 is constitutional.

I am not convinced that some of the powers given for purposes other than rights of way are permitted under Sec. 23 of the Constitution, but those purposes are not before us in this case. If they were stricken from the statute, I think § 74 would still be constitutional under the rule that although a statute may be invalid or unconstitutional in part, the part that is valid will be sustained where it can be separated from the part which is void. If, after the deletion of the invalid part, the remaining portions of an act or statute are complete within themselves, sensible and capable of execution, the statute will stand notwithstanding its partial invalidity. Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74; Springer v. Williams, 229 Ala. 339, 157 So. 219; Harper v. State, 109 Ala. 28, 19 So. 857.

The part of the statute about which I am doubtful could be stricken in toto and the statute would still be complete, sensible and capable of execution as it probably has been for thirty-nine years.

BLOODWORTH, Justice (dissenting).

Appellants seek to reverse a final decree of the Montgomery County circuit court, in equity, which approved and affirmed an order of the Alabama Public Service Commission, and declared Title 10, § 74, Code of Alabama 1940, to be constitutional. The order granted a certificate to Hunt Oil Company [pursuant to this section] declaring that Hunt's construction of a 100-mile long private pipeline from the Gilbertown oil fields to Hunt's oil refinery in Tuscaloosa would be in furtherance of the industrial development of Hunt Oil Company in Alabama. Such an order is a prerequisite to Hunt's instituting condemnation proceedings against appellants (landowners) to acquire rights of way for the pipeline.

The question is: "Does Title 10, § 74, granting to certain designated private corporations the power of eminent domain, violate either the State or the Federal Constitutions"? Contrary to the result reached by the majority, I have concluded that it does and is unconstitutional. The reasons for my conclusion will hereinafter appear in detail.

The statute in question is:

"§ 74. (7019) (3485) Mining, manufacturing, power and quarrying corporations may acquire by condemnation rights of way, tunnels, subways, etc.—Every mining, manufacturing, industrial, power and quarrying corporation or company may acquire by condemnation rights of way or easements over or across the lands or easements of others for ways and rights of way on or under which it may erect or construct and operate railways, tramways, pipe lines, transmission lines, cables, ways, roads and underground passages, not exceeding one hundred feet in width, for the purpose of connecting any part of its lands, works, plants, mines, lines or system with any other part thereof or with any public road, railroad, navigable water, or with the mines, lands, works, plants, lines or system of any other such company or corporation or owner, or with any shipping, storage, delivery, receiving or distributing point, and for the purpose of transporting or transmitting any materials, equipment or products used by or mined, manufactured, produced, acquired, received, sold, delivered, or distributed or subject to contract for distribution by such corpora-

tion or company and to cut and fell trees on or so near such right of way as might by falling or otherwise, injure or endanger any of the works, lines, machinery, plant or equipment placed thereon. Such company may acquire by condemnation lands on the bank of or adjoining any navigable waters, not exceeding in area ten acres, on which it may erect or construct and maintain, and operate power plants, private or public warehouses, depots, storage plants, tipples, loading and unloading places, hoist and hoist houses, wharves, piers and landings, to be used in connection with its operations or otherwise, and only a reasonable toll or charge, to be approved by the public service commission of Alabama, shall be made for public use thereof, provided, however, that the right to condemn herein given shall not include the right to condemn any private residence, nor the outhouses, garden, nor orchard within the curtilage of any private residence. The acquisition of rights of way for mining, manufacturing, industrial power and quarrying purposes as provided herein, is hereby declared to be a public use and necessary to the development of the state. No proceeding for condemnation of rights of way for transmission lines, cables, or pipe lines herein authorized, shall be instituted until the Alabama public service commission shall have issued a certificate on application, after such public notice not exceeding thirty days, as such commission shall prescribe, to the effect that in the opinion of the commission the proposed use would be in furtherance of industrial development by such company or corporation or its privies, in this state; the duty and authority being hereby conferred on the said commission to hear and set up such application. Every corporation acquiring a right of way by purchase or condemnation for any purpose herein contemplated shall have the right where necessary to cross public roads and lands, and all navigable rivers and streams where necessary for any

such use, subject to such reasonable conditions as to the exercise of the right as may be prescribed by any public authority having jurisdiction over same. Provided further that nothing herein contained shall be held or construed as relieving or exempting any person, firm or corporation, in fact, engaging in or operating, his, their or its business as a public utility, and otherwise subject to regulation by laws now existing or hereafter enacted; from full subjection to and compliance with all such laws, or from liability for any fees, licenses or taxes payable in respect of such utility business. (1915, p. 770; 1932, Ex.Sess., p. 24.) "

In substance, this statute allows every mining, manufacturing, industrial, power and quarrying corporation to acquire by exercise of the power of eminent domain, rights of way across the lands of others on, or under which, it may construct railways, pipelines, roads, etc., for the purpose of connecting with its other lands, or with any public road, railroad, or navigable waterway, or with the lands of any other such corporation, or with any shipping or distributing point.

Although I recognize the necessity for the exercise of the right of eminent domain by private corporations in certain instances (certainly in those situations in which such corporations are affected with a public interest, i. e., public utilities), I note that there are limitations placed upon its exercise. The primary restraint upon this power is imposed by Art. I, § 23, Alabama Constitution 1901, which provides in part:

"* * * but private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; provided, however, the legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate

the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner * * *."

From my examination and study of Title 10, § 74, supra, I must conclude that it permits private property to be acquired under power of eminent domain for private use, in contravention of this constitutional provision that private property shall not be taken " * * * for private use, or for the use of corporations, other than municipal, without the consent of the owner * * *." Consequently, I would hold the statute to be unconstitutional.

I pass no judgment upon the applicability of that clause in § 23, Art. I, supra: " * * * provided, however, the legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations * * *" to other factual situations or to other statutes (such as § 89, Title 10, Code of Alabama 1940, granting rights of way to certain corporations to make connection with public highways, and § 56, Title 19, Code of Alabama 1940, granting rights of way to owners of landlocked tracts to connect with public road). As I have already indicated, I am clear to the conclusion that such constitutional grant does not permit a taking under power of eminent domain by Hunt of the rights of way for its 100-mile pipeline under authority of § 74, supra.

The factual background of this case is as follows: The appellee, Hunt Oil Company, has sought to obtain the power of condemnation conferred by Title 10, § 74, supra, in order to acquire rights of way or easements for the construction of an oil pipeline from the Gilbertown oil field in Alabama to Hunt's oil refinery in Tuscaloosa. The proposed pipeline would extend for a distance of approximately 100 miles across Choctaw, Sumter, Greene and Tuscaloosa Counties. When completed it would be utilized solely by the Hunt Oil Company to transport its oil products to its refinery.

Pursuant to provisions of the statute, Hunt filed an application with the Alabama Public Service Commission seeking certification that the use of the proposed pipeline would be in furtherance of the industrial development by Hunt Oil Company in Alabama. At a public hearing required by the statute, Hunt introduced evidence which indicated that the pipeline was necessary for Hunt to achieve its planned industrial expansion in Alabama. For the past twenty-seven years crude oil has been barged by Hunt from the Gilbertown oil field in Choctaw County to Hunt's oil refining plant in Tuscaloosa. Now, Hunt considers that it will be more economical to transport its crude oil by pipeline. It was shown that Hunt intends to expand its refinery at Tuscaloosa at a cost in excess of $5,000,000. In addition to this capital expenditure, the enlarged plant would provide employment for 150 individuals, would permit the refining and distribution of such petroleum products as high test gasoline, jet fuel, diesel fuel and asphalt, and would require the services of three large trucking firms in the state to transport its products. These, and several other factors, Hunt argued, evidence its industrial development and warrant the granting of the power of condemnation.

Appellants, landowners whose lands will be subject to the condemnation, appeared before the Alabama Public Service Commission to protest approval of Hunt's application.

After hearing evidence presented by Hunt and the opposing landowners, the Alabama Public Service Commission certified : " * * * the use of the proposed pipe line * * * would be in furtherance of industrial development by Hunt Oil Company in Alabama, pursuant to the provisions of Section 74, Title 10, Code of Alabama, 1940, as amended."

A bill of complaint was then filed by the landowners in the circuit court of Montgomery County, in equity, challenging the findings of the Alabama Public Service Commission and attacking the constitution-

ality of Title 10, § 74, supra. The circuit court found: Hunt to be a corporation within the meaning of the statute; the proposed pipeline to be for a public use; the findings of the Alabama Public Service Commission to be correct; and Title 10, § 74, to be constitutional. The appeal is from this decree.

The landowners agree that the evidence was undisputed before the Alabama Public Service Commission that the proposed pipeline would benefit the industrial development of Hunt Oil Company. As the statute is framed they concede that this was the sole function the Alabama Public Service Commission had to perform and having found this issue to be favorable to Hunt, the certificate was therefore issued for the pipeline.

On the other hand, the landowners insist that Title 10, § 74, supra, violates the Constitution of the State of Alabama, particularly Section 23, supra, in that it permits Hunt, a privately owned oil corporation, by exercise of the right of eminent domain to take private property for its own private use, without the consent of the landowners. They contend that, to be constitutional, such taking must be for a "public purpose," or "public use."

To these contentions, Hunt Oil Company first replies that it does not quarrel with the proposition that land taken by a private corporation under power of eminent domain must be taken for a "public purpose" or "public use." However, it denies that such public purpose requires actual "use" by the public or "use" subject to public control. Hunt says the statute and the Constitution are satisfied because a "public use" is synonymous with a "public benefit"; a "public benefit" is obtained by the State's general industrial development; the State's general industrial development is achieved

when it is determined that the proposed right of way is in furtherance of the industrial development of Hunt Oil Company in Alabama. Any other construction, Hunt contends, would require us to follow a narrow, inflexible and constricted view, contrary to our decided cases. Hunt insists that the statute is constitutional because its constitutionality has already been passed on by our court, citing Sloss-Sheffield Steel & Iron Co. v. O'Rear, 200 Ala. 291, 76 So. 57 (1917).

From an historical viewpoint, statutory provisions granting the power of condemnation to mining and manufacturing corporations in Alabama first appeared in the Code of 1876.[1] The predecessor of the statute (Title 10, § 74, supra) under which Hunt asserts its rights, was enacted in 1903[2] and, as codified, provided:

"* * * Mining, manufacturing, power and quarrying companies may acquire by condemnation lands for ways and rights of way for railways, tramways, canals, aqueducts, tunnels, underground passages, and roads whereby to connect any part of their lands, or works, with their principal place of business, or with any public road, railroad, or navigable waters, or with their mines on other lands, not exceeding one hundred feet in width throughout the length of such railways, tramways, canals, aqueducts, tunnels, underground passages, or roads."

(See § 3485, Code of Alabama 1907.)

The statute was amended in 1915[3] extending the power of condemnation to encompass transmission lines and lands, located on a navigable river, upon which specified facilities could be erected. The amendment also contained a provision requiring approval of the Alabama Public Service Commission before proceedings un-

---

1. See, e. g., § 1817, Code of Alabama 1876; § 1563, Code of Alabama 1887; § 1145, Code of Alabama 1897. We do not consider that statutes relating to mill dams fall within this category.

2. See Gen.Acts of Alabama 1903, Act No. 395, p. 310, appvd. Oct. 2, 1903.

3. See Gen.Acts of Alabama 1915, Act No. 698, p. 770, appvd. Sept. 25, 1915, amending § 3485, Code of Alabama 1907.

der the section could be commenced. (See § 7019, Code of Alabama 1923.)

The statute as presently worded was enacted in 1932.[4] It is broader in scope than its predecessors and includes the requirement that the Alabama Public Service Commission issue a certificate that the proposed use will be in furtherance of industrial development by the corporation in Alabama.

Hunt contends that our decision in Sloss-Sheffield Steel & Iron Co. v. O'Rear, supra, settled all constitutional questions as to the validity of the statute and thus forecloses our consideration of its constitutionality. I cannot agree with this contention for two reasons. First, the statute upheld in *Sloss-Sheffield* has been twice amended so that in its present form (Title 10, § 74) it reflects significant changes and a scope broader than its predecessor. Second, the determination in *Sloss-Sheffield* that the statute was not unconstitutional under § 22 of our Constitution, because it applied solely to corporations, does not mean that the statute and its successors are thereby free from all constitutional imperfections once and for all. Nor does it now preclude the court from considering constitutional questions which were not raised or considered in the earlier decision. Boyd v. State, 53 Ala. 601 (1875), aff'd 94 U.S. 645, 24 L.Ed. 302.

Recognizing that the earlier decision does not prohibit examination of Title 10, § 74, I turn to the consideration of its constitutionality. The validity of any enactment conferring the power of condemnation must

be weighed against the constitutional requirement, which I have previously set forth, that private property can be taken under the power of eminent domain only for a public use. Alabama Constitution 1901, Art. I, § 23, supra. Similar provisions are contained in other states' constitutions.[5] Such provisions were originally adopted to prohibit the expropriation of private property for the public use without just compensation. However, with the increased exercise of the power of condemnation accompanying the industrial expansion in the country, these provisions have been interpreted in other states as impliedly prohibiting the taking of private property for private use, with or without compensation.[6]

Although it is now a universally accepted view that the property taken must be devoted to a public use, courts have found it virtually impossible to formulate a precise definition of the term "public use" which can be applied to every situation. Two distinct views have developed. One interpretation views public use literally, requiring the actual right of use by the public.[7] The second view construes public use to mean public benefit or welfare.[8] Under this second interpretation, the condemnation is allowed if it contributes to the general welfare and prosperity of the community or state

An examination of the Alabama cases reveals language which is supportive of both views. In the early case of Aldridge v. Tuscumbia, Courtland and Decatur Rail Road Company, 2 Stew. & P. 199, 23 Am. Dec. 307 (1832), this court upheld the va-

---

4. See Gen.Acts of Alabama, Ex.Sess., 1932, Act No. 31, p. 24, appvd. Sept. 24, 1932, amending § 7019, Code of Alabama 1923.

5. The following are typical: Michigan Const., Art. 10, § 2 (1963); Georgia Const., Art. 1, § 3, para. 1 (1945); Tennessee Const., Art. I, § 21 (1870).

6. For a discussion of the development of the concept of "public use," see Annotation 54 A.L.R. 7; Comment, 58 Yale L.J. 599 (1949); Comment, Law and the Social Order 688 · (1969); 2A Nichols, Eminent Domain § 7.

7. See, e. g., Oxford County Agr. Soc. v. School Admin. Dist. No. 17, 161 Me. 334, 211 A.2d 893 (1965); Gravelly Ford Canal Co. v. Pope & Talbot Land Co., 36 Cal.App. 556, 178 P. 150 (1918).

8. See, e. g., State ex rel. Allerton Parking Corp. v. City of Cleveland, 4 Ohio App. 2d 57, 211 N.E.2d 203, aff'd 6 Ohio St.2d 165, 216 N.E.2d 876 (1965); Department of Public Works and Buildings v. Farina, 29 Ill.2d 474, 194 N.E.2d 209 (1963).

lidity of a legislative act incorporating the Tuscumbia, Courtland & Decatur Railroad and conferring upon it the power of condemnation in its charter. The landowners over whose land the railroad sought to exercise its power of condemnation claimed that the land taken could not be for a public use since only the Tuscumbia, Courtland & Decatur Railroad would use the property and would benefit from its construction. Chief Justice Lipscomb, speaking for the court, wrote:

> "The distinction taken, between public use and public benefit, does not seem to me, sustained by reason; nor has precedent attached a different meaning to the terms: in practical application, they are convertable terms. * * * Whatever is beneficially employed for the community, is of public use, and a distinction cannot be tolerated."

These comments would seem to evidence an espousal of the liberal view of public use, equating it with public benefit.

Subsequent to the *Aldridge* case our decisions tended to narrow the scope of public use. In Sadler v. Langham, 34 Ala. 311 (1859), our court considered the validity of two enactments authorizing the exercise of the power of condemnation to establish private roads and erect mill dams. The court very carefully outlined the scope of its inquiry:

> "1st. What is meant by the phrase, public use?

> "2nd. In what manner, and by whom, is the question whether or not the proposed use is public to be determined?

> "3rd. Must the compensation be paid before the property is taken, or may it be secured for after payment?

> "4th. The prohibition being only against taking property of another for

*public use,* may it be taken for private use?

> "The first and second of the above questions are far the most important and difficult. Their difficulty is enhanced by the irreconcilable conflict observable in the adjudged cases, as mentioned above. * * *"

In attempting to answer these questions, the court set forth the following rules.

> "1. The legislature cannot, either with or without compensation, take private property for private use. * * *

> "2. When a use is public, the legislature are the sole judges of the expediency of authorizing the taking of private property for that public use. * * *

> "3. Certain uses and purposes are *per se* public, such as public highways, public buildings, and the improvement of the channels of public rivers. Others have been pronounced public, by well considered decisions, as railroads, turnpikeroads, public ferries, public grist-mills, &c. * * *"

This court concluded that the two enactments authorized a taking for a private use and were therefore unconstitutional.[9]

A like restrictive view of the concept of public use was set forth in Columbus Water Works Co. v. Long, 121 Ala. 245, 25 So. 702 (1898). The Columbus Water Works Company, a foreign corporation, sought to condemn land for a water shed for its reservoir in order to prevent the water supply of Phoenix City and Girard, Alabama, and Columbus, Georgia, from becoming polluted. The power of condemnation for such purposes was granted to water works companies by a legislative enactment. Demurrer to the Columbus Water Works Company's petition was sustained by the trial court. This court reversed,

---

9. The Alabama Constitution was subsequently amended to allow the legislature to secure to persons or corporations the right of way over the lands of other persons or corporations (now § 23, supra).

An enactment granting the power of condemnation to establish a private road of necessity was upheld in Steele v. County Commissioners, 83 Ala. 304, 3 So. 761 (1887).

holding that the demurrer should have been overruled. The court observed:

"* * * It is not the instrumentality employed for operating the public use, but the use itself, that satisfies the constitution. The fact that the use is public and the public may have the privilege of enjoying it, is the controlling principle. * * *"

This language has been cited with approval in several of our subsequent decisions. Alabama Interstate Power Co. v. Mt. Vernon-Woodberry Cotton Duck Co., 186 Ala. 622, 65 So. 287, aff'd 240 U.S. 30, 36 S.Ct. 234, 60 L.Ed. 507 (1916); Gralapp v. Mississippi Power Company, 280 Ala. 368, 194 So.2d 527 (1967).

On the other hand, the case of Brammer v. Housing Authority of Birmingham Dist., 239 Ala. 280, 195 So. 256 (1940), illustrates a more liberal construction of public use. In *Brammer,* this court upheld the validity of the Housing Authority Law which allowed the State, its agencies and subdivisions to take advantage of federal aid for slum clearance. In discussing the term "public use," the court made the following observations:

"* * * True, as pointed out in 18 Am. Jurisprudence, Pg. 665, there is a division among the authorities upon this question, many holding that these words, 'public use,' as used in the organic law relating to eminent domain, should receive an elastic or liberal interpretation, while others hold they should be given a literal or narrow meaning. We think the weight of authority favors the elastic or liberal meaning, including our early case of Aldridge v. Tuscumbia, C. & D. R. R. Co., 2 Stew. & P. 199, 23 Am. Dec. 307, wherein public use and public benefit were held to be synonymous. * * *

"We do not understand the Sadler case, supra, as overruling the Aldridge case as the opinion cites said case without criticism. Nor do we understand the Sadler case as being in actual con-

flict with the Aldridge case, as the real holding in the former and its companion that the taking for the road was for a private one and the ad quod damnum proceedings for the mill dam did not disclose that it was not to be for a private use or purpose, and the act was unconstitutional because it authorized the taking of the land for a private use and did not apply to mill dams for public use or benefit. It is needless, however, to attempt to distinguish or reconcile these cases for, if we concede that the narrow meaning should prevail, the great weight of authority holds that the result and purpose to be accomplished under the act in question was for a public use. * * *"

This court had occasion to amplify and explain these remarks in Opinion of the Justices, 254 Ala. 343, 48 So.2d 757 (1950). There, the court rendered an advisory opinion to the Governor as to the constitutionality of certain acts of the legislature relating to slum clearance and redevelopment projects. (This legislation conferred on a housing authority the power to condemn slums to be subsequently redeveloped for either public or private use.) In discussing the implication of the *Brammer* decision, it was stated:

"* * * The Court [in *Brammer*] referred to 18 Am.Jur. 663, section 37. In the text of that authority, we find the following: 'The courts have properly pointed out that almost any legitimate business enterprise, indirectly to some extent, may be regarded as of benefit to the public, and that *an indefinite field is opened up when the doctrine is accepted that public benefit alone is sufficient to make the use a public one,* warranting the exercise of the power of eminent domain.' See, also, 29 Corpus Juris Secundum, Eminent Domain § 31, p. 823 et seq. [Emphasis supplied]

"The Court in the Brammer case, supra, was not dealing with an effort to extend the words 'private use' in section 23 of the Constitution to apply to such a

broad indefinite field whenever there is a public benefit to result, though vague, indefinite and restricted. *We appreciate the contention that this would be the opening up of a field for the application of section 23, supra, which we do not wish to do,* and was not discussed in that aspect in the Brammer case, supra. The case of Aldridge v. Tuscumbia, C. & D. Railroad Co., 2 Stew. & P. 199, there cited with approval, referred to condemnation by a railroad. The legislature may delegate the authority to condemn to public utilities, which are in essence private enterprises, but whose operations are for the use of all the public who have a legal right to its benefits which are not vague or indefinite or restricted. * * * We think the Brammer case, supra, intended to apply the principle to that phase of the police power there contemplated." [Emphasis supplied]

Quite candidly, I think it difficult, if not impossible, to conclusively categorize all of our decisions as adhering to the strict view of "public use" on the one hand or to the liberal view on the other. Both Hunt and the landowners have seized upon language in our various opinions to support their respective theories as to which view Alabama follows.

It is important to recognize that our previous decisions reflect applications of concepts of public use to widely divergent and constantly changing situations. Each decision must be viewed in the factual context in which the case arose. Plankroads, canals, and public grist mills, recognized as public uses by our court in 1859 in Sadler v. Langham, supra, have little significance in our present day society. This court could not in 1859, nor can it today, foresee all of the future situations in which the right of eminent domain might be exercised. All that the court can do is to apply the concepts of public use, as the court views them, to the factual situation before it. In this respect, I view the remarks of the Illinois Supreme Court in Department of Public Works and Buildings

v. Farina, 29 Ill.2d 474, 194 N.E.2d 209 (1963), to be particularly apt.

" * * * The question of what constitutes a public use has been before this court on several occasions where general principles were applied to special conditions. The language used in those decisions must be read in connection with the facts involved and is authority only for what is decided on such facts. * * * "

To summarize, I think that the history of our decisions clearly evidence the evolution taking place in this field and the varying concepts of public use which this court has embraced. I think, however, that our pronouncement in *Brammer* and *Opinion of the Justices,* supra, present concepts of public use which are particularly applicable to the case at bar. This court held in *Brammer* that the weight of authority favors the more liberal meaning of public use. On the other hand, the court recognized in *Opinion of the Justices,* supra, that mere public benefit alone is not, in and of itself, sufficient to make a use a public one, and that the benefits to be gained must not be vague, indefinite or restricted. (See our quotation from *Opinion of the Justices,* supra.)

Applying these concepts of public use to the case before us, it becomes apparent that Title 10, § 74, supra, is unconstitutional. The statute declares that the acquisition of the specified rights of way is for a public use and necessary to the development of the State. A corporation seeking to obtain the power of condemnation conferred by the statute, must acquire a certificate from the Alabama Public Service Commission that the proposed use would be in furtherance of the industrial development of the corporation in the State. Thus, by its terms, the statute equates private industrial development with public use.

Consequently, as I see it, *the ultimate question as to the validity of the statute is whether public use and private industrial development are in fact synonymous.* Does a taking of property which will promote

the industrial development of a private corporation in Alabama per se result in benefits of such a nature or degree as to constitute a public use? I believe that the question must be answered in the negative.

*Even if the court embraces the broadest interpretation of public use, I do not think it necessarily follows that the industrial development of a private corporation in Alabama produces benefits of the nature and character required to constitute a public use.* This conclusion is reinforced when the scope of the statute is considered. The statute's application is not confined to public service corporations, such as public utilities, which we have recognized as being affected with the public interest, but rather includes any manufacturing and industrial corporation in Alabama. A manufacturing or industrial corporation which can demonstrate to the Alabama Public Service Commission that its industrial development would be promoted by the acquisition of a right of way of the nature specified in the statute, could (under the statute) acquire the power of condemnation to obtain a right of way over any private property for any distance in any direction anywhere in the State.

The proposed pipeline to be constructed by Hunt presents a clear case which sustains my conclusion that the statute is invalid. The rights of way needed to construct the pipeline are of the nature specified by the statute. Furthermore, Hunt demonstrated to the Alabama Public Service Commission that its industrial development would be enhanced if it acquired these rights of way for the pipeline. However, the pipeline will be utilized only by Hunt Oil Company to transport *its* crude oil products from the oil fields to *its* refinery; no other person or corporation will have the right to use the pipeline. The benefits to be derived by Hunt from the pipeline are readily apparent. It will provide Hunt Oil Company with a faster, more economical, and reliable method of transporting its crude oil to its refinery. Though

the benefits to be obtained by the public of Alabama in the form of increased employment and capital expenditures were also detailed before the Alabama Public Service Commission, I cannot believe that these benefits alone are sufficient to make the use a public one, warranting the exercise of the power of eminent domain. Opinion of the Justices, supra. Nor is it certain that Hunt's capital expenditures are directly dependent upon the acquisition of the rights of way for the pipeline. For aught that appears, Hunt's capital expenditures will be made regardless.

Cases relied upon by Hunt to sustain its position do not militate against this conclusion. In Ohio Oil Company v. Fowler, 232 Miss. 694, 100 So.2d 128 (1958), the oil company proposed to operate *a common carrier pipeline* for transporting condensate and oil from two producing fields to a refinery twenty-five miles away. At the time the pipeline was to be constructed, there would be only one purchaser to utilize the line. The Mississippi Supreme Court upheld the oil company's right to acquire the needed rights of way by condemnation. In reaching this determination, the court stressed the significance of the pipeline being a common carrier.

"\* \* \* A company organized to transport condensate or oil by a pipeline is organized for a public use for which private property may be condemned, *provided that the facilities of the company are open to the public generally on equal terms.* The use is not rendered a private one by the fact that only a few persons will be served at the time the property is sought to be taken. \* \* \*" [Emphasis supplied]

The Louisiana Court of Appeal reached the same conclusion when confronted with a similar factual situation. Texas Pipe Line Company v. Stein, 190 So.2d 244 (La. App.1966), rev. and appeal dismissed as moot, 250 La. 1104, 202 So.2d 266 (1967). The proposed pipeline would operate as *a common carrier* regulated by the Louisiana

Public Service Commission. The court stated:

"The public purpose is no less served because the pipeline initially will deliver to only-one consumer. If this were reason to reject its qualification as a public utility carrier, it would be very difficult, if not impossible, for any new common carrier pipeline for delivery of crude oil to a refinery to qualify, for we may fairly assume they are initially connected to only one refinery. It is not the number of persons who initially contract for use of the line, nor the number who might actually use it at any given time, which determines its public character, *but rather the extent of the right to its use by the public*. (Citing cases) * * *" [Emphasis supplied]

A like determination was also made by the Superior Court of New Jersey in Texas Pipe Line Co. v. Snelbaker, 30 N.J.Super. 171, 103 A.2d 634 (1954), where again the significance of the pipeline being *a common carrier* was noted.

Rather than sustaining Hunt's position, I believe that these cases reinforce the conclusion that Hunt's exercise of the power of condemnation to construct a private pipeline would constitute a taking of private property for a private use. The courts in all of these cases very carefully noted the importance of the pipeline being a common. carrier—a factor not present in this case.

Finally, Hunt points to State Highway Commission v. Thornton, 271 N.C. 227, 156 S.E.2d 248 (1967), as being supportive of its position. The case involved a proceeding to condemn a right of way for a road across the lands of defendants to connect the trucking facilities of Associated Transport, Inc., with a public highway. The defendants claimed that this was a private use since the road would be primarily for the use of Associated Transport. The North Carolina Supreme Court upheld the right to exercise the power of condemnation for this purpose. The court's remarks on the nature of public use are, I think,

particularly relevant to the case here, and again, buttress the conclusion I have reached.

" * * * The economic benefits to the community, anticipated from the attraction to it of a large and wealthy prospective employer, are not determinative of whether property taken in order to accomplish that purpose is taken for a 'public use'. *The home or other property of a poor man cannot be taken from him by eminent domain and turned over to the private use of a wealthy individual or corporation merely because the latter may be expected to spend more money in the community*, even though he or it threatens to settle elsewhere if this is not done.

This the Constitution forbids.

"The right of the plaintiff to acquire the property of the defendants by eminent domain depends, therefore, upon *whether the new road is a public road or is a road for the private benefit* of Associated Transport, Inc., not upon the undoubted benefits to the community of having the plant of Associated Transport, Inc., located nearby." [Emphasis supplied]

The Per Curiam opinion seems to say that the clause in § 23, Art. I, supra (providing that the legislature may by law secure to persons or corporations rights of way over lands of others), excepts rights of way from the general prohibition against taking private property for private use and justifies the acquisition of the pipeline right of way in this case. I think this reasoning to be fallacious.

A view of the historical context in which this proviso was added to the Constitution will illustrate my point.

Our first Constitution in 1819 provided, with respect to the power of eminent domain: "Nor shall any person's property be taken or applied to public use, unless just compensation is made therefor." Forty years later, in Sadler v. Langham, supra, this court was faced with the consideration of the constitutionality of two statutes au-

thorizing the exercise of the right of eminent domain to establish a private road and erect mill dams. The court concluded that the enactments authorized a taking for a private use and thus violated the Constitution.

Two years later, in 1861, the Constitution was amended to add the following provision:

"Private property shall not be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; *but the right of way may be secured by law, to persons and corporations,* over the lands of persons and corporations; also, the right to establish depots, stations and turnouts to works of public improvements; *Provided, just compensation is made to the owner of such land.*" [Emphasis supplied]

The portions italicized are substantially the same as the proviso now under consideration. It is my conclusion that this provision was added to the 1861 Constitution to remedy the inequities resulting from the *Sadler* decision by allowing the legislature to grant rights of way of necessity to give landowners access to public roads, railroads, or navigable waters.

This interpretation was accepted by this court in Steele v. County Commissioners, supra, where, as in *Sadler*, the court construed statutes allowing the establishment of private roads. The court upheld the constitutionality of these statutes and very clearly explained the import of the amendment to the Constitution:

"When the framers of the constitution of 1861 were brought to consider the exercise of the right of eminent domain, they were faced by the decision in Sadler v. Langham, supra, holding that the legislature had no authority to confer such power [establishment of private roads], which decision was made two years previously. Having been taught by experience the imperious necessity of some power to establish private roads, so that there may be secured to the owners of

lands, shut in by lands of co-terminous proprietors, a way of egress and ingress to and from the public roads, thereby preserving and enhancing the value, promoting the owner's full and lawful use and enjoyment of his property, and serving the public interest, by putting the citizen in position to perform public services, and to remedy the consequences of the decision that the legislature had no such authority under the constitution of 1819, they introduced the provision that the general assembly may secure by law to individuals and corporations the right of way over the lands of other persons and corporations."

Likewise, the legislature seemed to recognize a similar construction of the constitutional provision as evidenced by the first enactment granting the right of eminent domain to mining and manufacturing corporations.

"§ 1817. *Mining and manufacturing companies may construct roads and canals.*—Corporations organized under the provisions of this article, for mining or manufacturing purposes, shall have power to construct and operate a railroad tramway, turnpike or canal, for their own use and purposes, to and from their works or place of business, or to connect with some navigable stream, or with some existing railroad, turnpike or other public highway, not to exceed ten miles in length; and shall have the right to condemn for the use of such road the right of way in the lands over which the road may pass, on payment to the owner thereof just compensation; and the general laws applicable to writs *ad quod damnum* shall apply in all such cases."

Section 1817, Code of Alabama 1876.

As can be seen, the statute places a restrictive length upon the rights of way allowed while, secondly, limiting access to and from their works or place or business or to connect with public roads, streams, or railroads.

It was only in subsequent enactments that the legislature broadened the grant of eminent domain eliminating any restrictive lengths, increasing the types of rights of way authorized, and expanding the locations to which they could be extended.

To summarize this point, it is my conclusion that the proviso first added in 1861 and carried forward in substance to the Constitution of 1901, was simply not intended to allow the grant of eminent domain for the purposes specified in Title 10, § 74. It is clear that this court recognized in Steele v. County Commissioners, supra, the very limited applications authorized by the proviso.

The Per Curiam opinion observes that there is no conflict in this case with the federal constitution. I must respectfully disagree. In view of this observation, I think it necessary to state my views on this subject.

It seems to be well settled now that the Due Process Clause of the 5th Amendment, as well as the clause providing that private property shall not be taken for a public use, without just compensation, have "been made obligatory on the states by virtue of the Fourteenth Amendment and the decisions of the Supreme Court of the United States relating thereto." 26 Am.Jur.2d, Eminent Domain, §§ 7, 8, pp. 646–648; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733; Nichols on Eminent Domain, Vol. 2A, § 7.1 [3].

The general law on this subject is specifically noted at 26 Am.Jur.2d, Eminent Domain, § 8, p. 647:

"* * * It is settled, however, that a taking of property which does not comply with the specific clause—that is, *a taking for a private use* or without just compensation—*is a deprivation of property without due process of law.* Accordingly, since the adoption of the Fourteenth Amendment, *there is a possibility of a federal question in every taking by eminent domain under state authority, even if all the requirements of the constitution of the state are held to have been complied with. * * *"* [Emphasis supplied]

The following quotations from 26 Am. Jur.2d, supra, § 25 and § 34, should answer the contentions that the State's general industrial development is achieved by the furtherance of Hunt Oil Company's industrial development in Alabama.

"In certain instances, however, the constitutions of some of the states authorize the taking of private property for private uses—as, for example, ways of necessity, reservoirs, drains, flumes, or ditches for agricultural, mining, milling, domestic, or sanitary purposes—or any other use necessary to the complete development of the material resources of the state or the preservation of the health of its inhabitants. But these provisions, and the statutes, enacted thereunder, have ordinarily been construed as not intending to authorize a taking of private property without some public necessity or advantage.

\*     \*     \*     \*     \*     \*

"Generally, it may be taken as established law that the incidental benefit accruing to the public from the establishment of a large factory, mill, department store, or other industrial or commercial enterprise, is not a valid ground for ranking such an enterprise as a public use and entrusting it with the power to acquire a suitable site by eminent domain. *Private enterprises that give employment to many and produce various kinds of commodities for the use of the people are not necessarily public uses.* Every legitimate business, to a greater or lesser extent, indirectly benefits the public by benefiting the people who constitute the state, but that fact does not make such enterprises public businesses. * * *" [Emphasis supplied.]

Sec also Nichols, supra, § 7.61.

And specifically with reference to pipelines, I think the following quotation at § 55, 26 Am.Jur.2d, supra, is apt.

"The condemnation of land for the construction of pipelines has had legislative authorization, and it is held that the court cannot say that the legislature does not have power to provide for the right to condemn property for such a use or purpose. A company organized to transport oil or condensate by pipeline is organized for a public use for which private property may be condemned, *provided the facilities of the company are open to the public generally on equal terms.* * * *" [Emphasis supplied.]

See also Nichols, supra, § 7.523 [2], [3].

Thus, I must conclude that the statute in question is unconstitutional under the federal, as well as the state, constitution.

To briefly summarize and to conclude this otherwise quite lengthy dissent, I would hold that Section 74, Title 10, Code of Alabama 1940, is unconstitutional because it permits a taking of private property, under the power of eminent domain without the consent of the owner, for a private use, contrary to the provisions of the Alabama Constitution 1901, Art. I, Sec. 23 [that private property shall not be taken for private use, without the consent of the owner].

I would reverse the decree of the circuit court of Montgomery County, in equity.

SIMPSON and HARWOOD, JJ., concur.

COLEMAN, Justice (dissenting).

I concur in the dissenting opinion of Bloodworth, J., except as to what is said with respect to the due process clause of the fifth amendment. As to the federal question I express no opinion.

I would reverse the decree of the circuit court.