BOLIN, Justice
(concurring in the result in case no. 1110439 and dissenting in case no. 1110507).
As a former probate judge, I presided over numerous condemnation cases, both direct and inverse. I readily admit that I misapprehended the law with regard to Alabama’s general eminent-domain provision, § 23, Ala. Const.1901, and the state-law claim of M & N Materials, Inc., that the Town of Gurley’s actions amounted to a regulatory taking.[9] I must respectfully dissent from the denial of rehearing in case no. 1110507, because I would grant rehearing; I also join Justice Bryan’s special writing.
The factual scenario that led to the instant proceeding has been well laid out in this Court’s opinion on original submission. It begins with and could be captioned by the colloquial acronym “NIMBY,” an abbreviation for “Not In My Backyard,” which is often the reaction when there is a conflict between private-property rights and needs for public use, as those needs are determined by governmental entities. Here, the needs of the public were set and obtained by what can only be explained as governmental arrogance, exhibited in raw fashion by the municipality when it decided it did not want a property owner outside its municipal boundaries to operate a quarry. This governmental entity embarked on a road to “lasso” the property in question into its corporate limits through a legislative annexation, issued a moratorium on a business license for the property own *51 er, and finally enacted a zoning ordinance to prohibit the operation of the proposed quarry business — without paying any compensation whatsoever for so doing, much less just compensation.
Rare would be the person who would want a quarry built and operated near his or her property — equally rare, however, would be a person who would not want roads and highways constructed from minerals and rocks extracted from the earth for the very construction of such roads and highways. I am now convinced that the Town had a lawful means to “take” the subsurface rights from the municipally conscripted property owner through eminent domain, but chose instead a course that allowed it to bypass paying just compensation therefor. Put another way, it chose to unlawfully take for free by regulation what it chose not to take by paying proper compensation through its conferred power of condemnation.
The State of Alabama is imbued as a sovereign with the right of eminent domain.
“[T]his Court set forth the following concerning the power of eminent domain and its limitations in Gober v. Stubbs, 682 So.2d 430, 433-34 (Ala.1996):
“ ‘The power of eminent domain does not originate in Article I, § 23. Instead, it is a power inherent in every sovereign state. Section 23 merely places certain limits on the exercise of the power of eminent domain. This Court stated in Steele v. County Commissioners, 83 Ala. 304, 305, 3 So. 761, 762 (1887):
“ ‘ “The right of eminent domain antedates constitutions, and is an incident of sovereignty, inherent in, and belonging to every sovereign State. The only qualification of the [inherent] right is, that the use for which private property may be taken shall be public.... The constitution [of our State] did not assume to confer the power of eminent domain, but, recognizing its existence, [further] limited its exercise by requiring that just compensation shall be made.” ’ ”
“ ‘In order for an exercise of eminent domain to be valid under § 23, two requirements must be met. See Johnston v. Alabama Public Service Commission, 287 Ala. 417, 419, 252 So.2d 75, 76 (1971). First, the property must be taken for a public use and, with one exception inapplicable here, it cannot be taken for the private use of individuals or corporations. This first restriction is no more than a restatement of a requirement inherent in a sovereign’s very right to exercise eminent domain. See Steele, 83 Ala. at 305, 3 So. at 762. Second, ‘just compensation [must be paid] for any private property taken.’ Johnston, 287 Ala. at 419, 252 So.2d at 76.’”
“(Footnotes omitted.)”
Town of Gurley v. M & N Materials, Inc., 143 So.3d 1,14-15 (Ala.2012).
Article I of the Constitution of Alabama, the article that defines and sets out our Declaration of Rights, provides in § 23 that private property shall not be taken without just compensation to the property owner first being provided. Therefore, the State may condemn property for lawful purposes, but must, as a limitation upon its inherent power, pay just compensation to the property owner for doing so. The State is further empowered to “confer” this right of a sovereign regarding eminent domain upon a municipal corporation. In Sloss-Sheffield Steel & Iron Co. v. O’Rear, 200 Ala. 291, 292, 76 So. 57, 58 (1917), this Court, quoting Lewis on Em. Dom., at § 374, stated:
*52 “‘Strictly speaking, the Legislature cannot delegate the power of eminent domain. It cannot divest itself of sovereign powers. But, in exercising the power, it can select such agencies as it pleases, and confer upon them the right to take private property subject only to the limitations contained in the Constitution. Accordingly it has been held that the right may be conferred upon corporations, public or private, upon individuals, upon foreign corporations, or a consolidated company composed in part of a foreign corporation, and upon the federal government. Such has been the common practice since the Revolution, and the right to do so has never been a matter of serious question; and it may be regarded as settled law that, in the absence of special constitutional restriction, it is solely for the Legislature to judge what persons, corporations or other agencies may properly be clothed with this power.’ ”
(Emphasis added.)
The State therefore has the power to lawfully “confer” the power of eminent domain upon municipalities, which it has done in statutes such as § 11-47-170, Ala. Code 1975, applicable to municipal corporations only, and § 11 — 80—1(a), Ala.Code 1975, applicable to both counties and municipal corporations. Section 11-47-170 reads, in pertinent part:
“(a) Except as otherwise provided in subsection (b), whenever in the judgment of the council, commission, or other governing body of a city or town it may be necessary or expedient for the carrying out and full exercise of any power granted by the applicable provisions of this title or any other applicable provision of law, the town or city shall have full power and authority to acquire by purchase the necessary lands or rights, easements, or interests therein, thereunder, or thereover or, for the purposes for which private property may be acquired by condemnation, may proceed to condemn the same in the manner provided by this article, or by the general laws of this state governing the taking of lands or the acquiring of interests therein for the uses for which private property may be taken, and such proceedings shall be governed in every respect by the general laws of this state pertaining thereto or by the provisions on the subject contained in this article when the same are followed.”
(Emphasis added.)
Further, § 11-80-1 states, in pertinent part:
“(a) Counties and municipal corporations may condemn lands for public building sites or additions thereto, or for enlargements of sites already owned, or for public roads or streets or alleys, or for material for the construction of public roads or streets or for any other public use.”
Therein lies the irony of not declaring this case to be what it really is — a hardball regulatory “taking” (by annexation and zoning ordinance) by government of a private-property interest. This allows what has been determined to be for the “public use” and public good to be accomplished by a municipality upon the unrecompensed shoulders of the property owner. The ultimate irony of it all is this: the State has given to or “conferred” on the Town of Gurley the lawful right to have condemned this property, if it had so needed, “for material for the construction of public roads or streets or for any other public use,” including “the necessary lands or rights, easements or interests ... thereunder,” and the Town can still do so in the future. However, the property owner is now prevented and precluded, without any state-law remedy, from ever extracting the *53 same material from its own property to mine and sell for use in the construction of public roads or streets by the heavy-handed power of government.
Inverse condemnation is the taking of private property for public use without formal condemnation proceedings and without just compensation being paid by the governmental agency or entity that has the power of condemnation. Foreman v. State, 676 So.2d 308, 305 (Ala.1995), overruled on the ground that § 23 requires a physical taking of property, Willis v. University of North Alabama, 826 So.2d 118 (Ala.2002); for the reasons set out in Justice Bryan’s special writing, I agree that Willis was wrongly decided and should be overruled. As such, it is in the nature of a derivative action available to a property owner when a condemnor defaults on its obligation to commence a condemnation proceeding. Section 18-1A-32, Ala.Code 1975, wisely provides a property owner with a remedy when such abuses occur:
“(a) If property is to be acquired through the exercise of its power of eminent domain, the condemnor shall commence a condemnation action for that purpose. A condemnor shall not intentionally make it necessary for an owner of property to commence an action in inverse condemnation, to prove the fact of the taking of his property.
“(b) The judgment and any settlement in an inverse condemnation action awarding or allowing compensation to the plaintiff for the taking or damaging of property by a condemnor shall include the plaintiffs litigation expenses.”
(Emphasis added.)
The property owner, M & N Materials, had its property involuntarily annexed into the Town of Gurley, was delayed and its property subsequently rezoned into a classification that did not allow for the mining of its subsurface mineral rights, and hence was a classic victim of a regulatory “taking” or “damaging.” From the beginning it would have been difficult to argue that the opinion on original submission was an unjust result based on the facts. The office of a rehearing application is to allow for a review and recalculation of the law involved. Now, based upon a review of, and a second look at, the law involved, it is my judgment that M & N properly availed itself of the state-law remedy provided by § 18-1A-32 in its complaint, and it is my considered opinion that the application for rehearing should have been granted in case no. 1110507.
One of the premier Alabama lawyers who ever practiced eminent-domain law was Maurice F. Bishop. He was well over 50 years ahead of his time when wrote the following:
“There is no phase of the law that has seen a wider expansion during the last few years than the law of eminent domain, and with the [then] new, tremendous interstate highway and local urban redevelopment programs now in full swing throughout Alabama, I feel that we can confidently predict that this phase of the law will become one of the most important and remunerative parts of our work. It will continue to increase in magnitude as the programs of the state, federal and local governments make mandatory the condemnation of lands for public purposes. Therefore, continuing legal education in this field is of increasing importance.”
The Alabama Lawyer, Vol. 22, No. 4 (October 1961).
Little did Bishop realize how prescient he was, especially given the present-day and future litigation that will inevitably develop from the battle between the rights *54 of private-property owners against public takings by governmental regulatory action.
WISE, J., concurs.

. This Court grants applications for rehearing in a narrow range of cases. Rule 40(b), Ala. R.App. P., provides that ”[t]he application for rehearing must state with particularity the points of law or the facts the applicant believes the court overlooked or misapprehended.” M & N Materials did so in its application, and I believe it has demonstrated a manifest error of law.