This appeal requires us to address the propriety of the trial court's order permitting Gateway Pipeline Company ("Gateway") to enter the property of Matthew Walker to conduct precondemnation examinations and surveys for a proposed pipeline. We affirm.
Gateway Pipeline Company, a subsidiary of United Gas Pipe Line Company, sought a precondemnation right of entry onto the property of Walker in November 1989 to conduct archaeological and environmental assessments of the land. Such assessments were required in order for Gateway to obtain permission from the Federal Energy Regulatory Commission ("FERC") to construct a pipeline through Walker's property. In May 1988, Gateway had applied, pursuant to § 7(c) of the Natural Gas Act, for FERC authorization to construct and operate the pipeline.
The trial court held a hearing in December 1989 to determine whether Gateway would be permitted to enter Walker's property. A representative of Gateway testified that Gateway was in the process of applying to the FERC for a permit under § 7(c) of the Natural Gas Act, and that environmental and archaeological assessments were required as a prerequisite to obtaining a certificate of public convenience and necessity from the FERC. The representative further testified that the assessments *Page 972 
were relevant to the selection of a pipeline route.
Walker moved to dismiss Gateway's complaint on the grounds that Gateway did not have a certificate of public convenience and necessity from the Alabama Public Service Commission or a comparable certificate from the FERC. The trial court denied Walker's motion. At the conclusion of the hearing, the trial court entered an order permitting entry. The court found that Gateway was "authorized to exercise the power of eminent domain and condemnation for pipeline purposes," and required Gateway to post a bond, pursuant to Ala. Code 1975, § 18-1A-52, in an amount sufficient to pay such damages as Walker might sustain. The trial court determined that Gateway was not required to possess a state or federal certificate as a prerequisite to obtaining an order for precondemnation entries and that Gateway had eminent domain power by virtue of §§ 10-5-1 and 10-5-4, Ala. Code 1975.
The entries onto Walker's property occurred in December 1989, and a cultural resources survey and environmental assessment were prepared for filing with the FERC. Approximately one year after the entries, the parties agreed to amend the order permitting entry by extending the time that the trial court would retain Gateway's bond in order to accommodate the assessment of any damages from the entries in a condemnation proceeding should such a proceeding be filed within the period during which the bond was retained. In December 1990, Walker counterclaimed against Gateway, requesting the trial court to set aside the order permitting entry and claiming damages for illegal entry and trespass. The basis of the counterclaim was the alleged absence of Gateway's authority to condemn. The trial court granted Gateway's motion to dismiss Walker's counterclaim.
Ultimately, the FERC did not approve the route affecting Walker's property, but approved a route in a different location. Gateway contends that the original route was not approved by the FERC for environmental reasons. In October 1991, the parties entered into a partial settlement agreement and release, on which the court thereafter entered a judgment. The agreement recognized the precondemnation nature of the right of entry proceeding and reflected that the parties had reached a settlement in the amount of $2,200 in Walker's favor regarding all claims for "physical injury" damages. The agreement further reserved Walker's right to appeal from the previous orders of the trial court, which among other things, dismissed Walker's counterclaim and denied his motion to set aside the order permitting entry.
This case was heard by the trial court sitting without a jury. Where ore tenus evidence is presented to the trial court, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v. Ames, 514 So.2d 877, 878 (Ala. 1987);Cougar Mining Co. v. Mineral Land Mining Consultants, Inc.,392 So.2d 1177 (Ala. 1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Gaston, supra;Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala. 1985);League v. McDonald, 355 So.2d 695 (Ala. 1978).
The trial court's order permitting entry stated, in pertinent part, the following:
 "This matter came on for a hearing on December 5, 1989, held for the purpose of determining whether and on what conditions plaintiff would be permitted to enter upon defendant's property. Notice had been given to defendant of the hearing and its purpose. At the hearing the court heard testimony from witnesses and considered documentary evidence. The court hereby makes the following findings of fact, states the following conclusions of law and enters the following order: *Page 973 
"Findings of Fact
". . . .
 "2. Plaintiff is a corporation formed for the purpose of constructing, operating and maintaining pipelines and, as is stated herein as a conclusion of law, is authorized to exercise the power of eminent domain and condemnation for pipeline purposes.
". . . .
 "4. Plaintiff plans and proposes to construct, operate and maintain a pipeline across and through [Walker's] Property.
 "5. Plaintiff desires to cause such examinations and surveys for its proposed pipeline as may be necessary to the selection of the most advantageous routes and sites, including the surveying and delineating of the proposed route and surveys and examinations for environmental and archaeological purposes. The nature of the contemplated entries, examinations, surveys and activities and the relevant time periods are described in the attached written description and conceptual drawing. Based on plaintiff's evidence, which defendant has not contradicted to the court's satisfaction, the contemplated entries and activities will be undertaken during reasonable daylight hours and for reasonable times, will be accomplished peaceably, will be accomplished without inflicting substantial injury and without violating any statute, and are reasonably necessary and authorized. The contemplated entries and activities will facilitate the purpose of the entries and will minimize damage, hardship and burden.
 "6. Insofar as the Property is concerned, plaintiff expressed its desires to defendant, and defendant expressed his refusal to comply with plaintiff's desires and his refusal to allow persons to enter upon the Property to conduct surveys and examinations. Plaintiff has made reasonable efforts to notify defendant of the contemplated entries and activities. Defendant has expressed his denial unless the court orders that entry be permitted.
 "7. Plaintiff recognizes that it will be liable under §§ 10-5-8, 18-1A-51, 18-1A-52 and 18-1A-54, Code of Ala., for resulting damages.
". . . .
 "9. Defendant has not satisfied the court as to any facts which constitute reasons why the contemplated entries and activities should not be permitted by an appropriate court order; however, the court finds and concludes that certain restrictions hereinafter stated are appropriate.
"Conclusions of Law
 "10. Plaintiff is authorized by law to exercise the power of eminent domain and condemnation for pipeline purposes. §§ 10-5-1, -3 -4, Code of Ala. 1975.
 "11. Plaintiff is entitled to an order permitting the contemplated entries and activities. Defendant has not shown good cause why the contemplated entries and activities should not be permitted by an appropriate court order. §§ 10-5-8 and 18-1A-50 et seq.
 "12. Inasmuch as this is not a proceeding for condemnation or eminent domain but is a proceeding to allow entries and activities for the purpose of considering suitability for condemnation or eminent domain and for the purpose of selecting the appropriate route and site, plaintiff is not required to have any federal or state certificate in order to obtain this order. §§ 10-5-8 and 18-1A-50 et seq."
(Emphasis added.)
Pipeline companies, such as Gateway, are expressly authorized by Ala. Code 1975, § 10-5-1, to exercise the power of eminent domain. The statute provides:
 "Corporations formed for the purpose of constructing, operating or maintaining railroads, street railroads, gas or electric works, water companies, power companies, canals, terminals, bridges, viaducts, wharves, piers, telegraph or telephone lines, pipelines or any other work of internal improvement or public utility may exercise the power of eminent domain in the manner provided by law." *Page 974 
Id. (emphasis added).[1] Moreover, Ala. Code 1975, § 10-5-4, reiterates the condemnation authority of pipeline companies. That statute provides:
 "Street railroad companies, telegraph, telephone, water, gas, electric, power, canal, pipeline companies and all other companies formed for constructing, operating or maintaining any work of internal improvement or public utility may acquire by condemnation for a right-of-way for their railways, lines, tunnels, canals, dams, pipelines, excavations or works, lands for ways and right-of-way not exceeding 100 feet in width throughout the entire length of such railways, lines, tunnels, canals, dams, pipelines, excavations or works, together with the right to cut down such trees as might, by falling, injure the same, together with the necessary lands, other than lands for ways and rights-of-way, for the construction or installation of facilities, apparatus or equipment necessary for the operation of such railways, lines, tunnels, canals, dams, pipelines, excavations or works."
Id. (emphasis added).
We think it unnecessary to go beyond these statutes to determine whether Gateway possessed the authority to exercise the power of eminent domain. The two statutes mutually reinforce each other and undeniably provide such authority. We therefore agree with the trial court's determination that Gateway "is authorized to exercise the power of eminent domain and condemnation for pipeline purposes."
The trial court recognized the rights conferred on Gateway by Ala. Code 1975, § 10-5-8, which provides:
 "Railroads, street railroads, mining, manufacturing, power, quarrying, telegraph, telephone, pipeline and other corporations having rights and powers to condemn:
 "(1) May cause such examinations and surveys for their proposed railroads, pipelines, lines, facilities, apparatus or equipment as may be necessary to the selection of the most advantageous routes and sites; and for such purpose, may, by their officers, agents and servants, enter upon the lands and waters of any person, subject to liability for all damages done thereto."
This statute expressly authorized Gateway, as a pipeline company, and "other corporations having rights and powers to condemn," to engage in the precondemnation activity that the trial court permitted. It is undisputed that the purpose of Gateway's entries was for examinations and surveys for its proposed pipeline.
Having established Gateway's statutory right and power to condemn, as well as its authorization to conduct examinations and surveys for its proposed pipeline, we turn to Walker's specific contentions regarding the trial court's order permitting entry.
Walker contends that Article I, Section 23, Constitution of Alabama 1901, prohibits Gateway from using Ala. Code 1975, §10-5-4, as authority for condemnation of private property without approval of the Alabama Public Service Commission. We note that Walker challenges the constitutionality of the application of § 10-5-4 to the present circumstances, rather than the constitutionality of the statute itself. In essence, Walker claims that the following passage from Sloss-SheffieldSteel Iron Co. v. O'Rear, 200 Ala. 291, 76 So. 57 (1917), requires Gateway to receive the approval of the Alabama Public Service Commission before engaging in precondemnation activity:
 "When the Legislature, expressing the sovereign will, designates and commissions the agent to exercise the right of eminent domain, the fundamental theory is that a public purpose and the public welfare will be promoted and effected through the activity of the agent so designated by the authority competent to declare the sovereign will. The advantage *Page 975 
that may and does accrue to the one or to the many thus designated to serve the public purpose is secondary and incidental only to the public benefit that is always supposed to be derived from the exercise of the power of eminent domain."
200 Ala. at 292-93, 76 So. at 58-59. Walker understands this passage to describe the Alabama Public Service Commission as "the authority competent to declare the sovereign will." His understanding, therefore, proceeds on the basis that Gateway, an "agent" as that word is used, is required to be "designated" by the Alabama Public Service Commission. We disagree with Walker's argument regarding the above passage. Where this Court referred to "the authority competent to declare the sovereign will," it was clearly referring to the Alabama Legislature, rather than the Alabama Public Service Commission. SeeJohnston v. Alabama Pub. Serv. Comm'n, 287 Ala. 417, 420-21,252 So.2d 75, 77-78 (1971). Although we agree with Walker's assertion that Gateway may not appoint itself as the agent of the sovereign, we do not believe that the Constitution of our State limits the authority of the Alabama Legislature to directly empower pipeline companies, among other types of companies, with the right of eminent domain in various circumstances without the intermediation of the Alabama Public Service Commission. We therefore hold that Walker's constitutional challenge is without merit.
Walker next contends that Gateway failed to comply with Ala. Code 1975, § 10-5-3, because it did not obtain a certificate from the Alabama Public Service Commission before initiating the proceeding for a right of entry onto Walker's property. We disagree with Walker's characterization of the proceeding at issue. Gateway brought this action to secure theprecondemnation right to enter the property of Walker to conduct various examinations and surveys. Gateway had not initiated a condemnation proceeding to which § 10-5-3 may be applicable. Section § 10-5-3 is inapplicable to precondemnation proceedings such as that involved in this case. The statute addresses only the acquisition "by condemnation [of] rights-of-way or easements." Ala. Code 1975, § 10-5-3 (emphasis added).
Walker next asserts that § 7(c) of the Natural Gas Act prohibits Gateway from exercising the power of eminent domain over his property without a certificate of public convenience and necessity. Section 7(c) provides:
 "No natural-gas company or person which will be a natural-gas company upon completion of any proposed construction or extension shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or undertake the construction or extension of any facilities therefor, or acquire or operate any such facilities or extensions thereof, unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations."
15 U.S.C. § 717f(c)(1)(A) (1988). We do not agree that this statute prohibits the precondemnation entry that the trial court authorized in this case. The statute addresses the actual construction of facilities, not entries that may take place prior to such construction and in preparation for acquiring a certificate of public convenience and necessity from the FERC. Gateway does not dispute the need for such a certificate before commencing construction. In fact, Gateway had begun the FERC application process in 1988. It is illogical to suppose that the FERC certificate that the examinations and surveys were conducted to acquire was a prerequisite to entering property for the purpose of conducting the examinations and surveys in the first place. We are unwilling to place such a construction on this statute. The language of § 7(c) clearly does not address precondemnation entries. Although a FERC certificate may have been a prerequisite to construction of pipeline facilities, such a certificate was not a prerequisite to precondemnation entries for the purpose of survey and examination. Therefore, we hold that the trial court did not err in not requiring *Page 976 
Gateway to acquire a FERC certificate before entering its order permitting Gateway's entry onto Walker's property.
Finally, Walker claims that acquisition of a certificate from the Alabama Public Service Commission was necessary because pertinent statutes of the Alabama Eminent Domain Code, Ala. Code 1975, §§ 18-1A-50 to -54, address the rights of a "condemnor," which is defined in Ala. Code 1975, § 18-1A-3(7), as "[a] person empowered to condemn." Walker contends that Gateway cannot empower itself to condemn and, therefore, must be empowered by the Alabama Public Service Commission to acquire "condemnor" status.
As we said earlier, we agree that Gateway may not empower itself to condemn. However, our previous resolution of the source of Gateway's power to condemn is equally applicable here. We do not agree that the relevant statutes require Gateway to be empowered by the Alabama Public Service Commission. Ala. Code 1975, §§ 10-5-1 and 10-5-4, expressly vest in Gateway the right to exercise the power of eminent domain. Therefore, we hold that a "condemnor," for purposes of Ala. Code 1975, §§ 18-1A-50 to -54, may be "empowered to condemn" through §§ 10-5-1 and 10-5-4.
Because of the nature of our resolution of the issues addressed herein, we pretermit discussion of Walker's remaining contentions, the majority of which rely on a characterization of the proceeding at issue as one for actual condemnation, rather than for a precondemnation right of entry. The judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] Although Walker claims that Gateway is not a company "formed for constructing, operating or maintaining any work of internal improvement or public utility," we do not find it necessary to address this claim. Pipeline companies, such as Gateway, are expressly named in Ala. Code 1975, §§ 10-5-1, 10-5-4, and10-5-8.